J-S49020-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| E.D. | |
| Appellant | No. 466 MDA 2018 |

Appeal from the Judgment of Sentence imposed March 6, 2018
In the Court of Common Pleas of Huntingdon County
Civil Division at No: CP-31-MD-0000044-2018

BEFORE:  SHOGAN, J., STABILE, J., and STEVENS, P.J.E.*

MEMORANDUM BY STABILE, J.:                **FILED SEPTEMBER 24, 2018**

Appellant, E.D., appeals from an order directing her to undergo continuing involuntary inpatient mental health treatment under 50 P.S. § 7305 ("section 305") of the Mental Health Procedures Act ("MHPA").  We affirm.

On November 10, 2017, Appellant, a physician, voluntarily entered the behavioral health unit of J.C. Blair Memorial Hospital ("Hospital") for inpatient treatment due to suicidal ideations.  She was diagnosed with bipolar disorder with mixed features and anxiety.  On November 17, 2017, the court ordered Appellant to undergo extended involuntary treatment under 50 P.S. § 7303 ("section 303").  On December 7, 2017, the court ordered continued inpatient treatment for ninety days pursuant to 50 P.S. § 7304 ("section 304").  On

_____

* Former Justice specially assigned to the Superior Court.

March 1, 2018, the Hospital filed a petition for continued involuntary inpatient treatment under section 305.

During a section 305 hearing on March 6, 2018, Appellant's treating psychiatrist, Dr. Qamar, testified that Appellant was depressed and suicidal. He stated that she had been on intensive treatment, including one-on-one and team counseling. On February 18, 2018, just one night after one-on-one counseling was discontinued, a Hospital nurse discovered that Appellant had made a noose with which to hang herself. Appellant told the nurse she planned to kill herself by hanging herself at the door that goes to a therapist's office. Although she had signed safety plans in the past, she did not cooperate with required treatment. She had been a physician, but at the time of her treatment, her license in Maryland was revoked and her license in Delaware was suspended. She had nowhere to live and no one to help her should she have been discharged.

Because of the suicide attempt and history of noncompliance with treatment, Dr. Qamar believed Appellant to be a danger to herself and recommended placement in a state hospital until she was stable and safe enough to be discharged. Dr. Qamar testified that Appellant failed to comply with prior treatment plans. He was alarmed that he had never had a patient who had posed such a danger to herself as Appellant, stating to her attorney during the hearing: "Do you know how much we are working to keep her safe? You don't . . . We have one-on-one with her, along with team. This is first time I have seen in my ten years' training that we stop one-on-one for one

- 2 -

night and she forms a noose under her pillow." N.T., 3/6/18, at 7. Dr. Qamar added that Appellant "still wants to kill herself." *Id.* at 2.

Appellant disagreed with the proposed plan to send her to the state hospital. She testified that her present course of treatment at the Hospital was best for her. She believed that the medication and counseling she had been receiving at the Hospital was helping her. She asked the trial court to allow her to commit herself voluntarily to inpatient treatment or pursue outpatient counseling.

The court denied Appellant's proposed course of future treatment, granted the section 305 petition, and ordered Appellant to undergo inpatient treatment for a period not to exceed 180 days at a state hospital. The order stated that Appellant "is severely mentally disabled within [the] meaning of the [MHPA] and presents clear and present danger to herself."

Appellant filed a timely appeal, and both Appellant and the court complied with Pa.R.A.P. 1925. The court wrote in its opinion: "Based on the evidence presented at hearing, [Appellant] is not only unable to care for her own safety, but poses a great risk to her life. As such, continued inpatient treatment is necessary." Trial Ct. Op., 4/30/18, at 2.

Appellant raises one question in this appeal:

Did the Commonwealth prove by clear and convincing evidence that the Appellant required continuing involuntary mental health treatment at a state hospital, despite the fact that the Commonwealth's sole witness admitted that the Appellant was willing to contract for safety, and the Appellant identified less restrictive means of treating her condition?

Appellant's Brief at 3. We conclude that the Commonwealth proved by clear and convincing evidence that Appellant required continuing involuntary mental health treatment at a state hospital.

Our recent decision in **In Re S.M.**, 176 A.3d 927 (Pa. Super. 2017), provides an excellent overview of the MHPA that defines key terms within this act, details each stage of the commitment process, and demonstrates section 305's relationship to other provisions in the MHPA. We reprint **S.M.'s** overview in full below:

> The MHPA provides for involuntary emergency examination and treatment of persons who are "severally mentally disabled and in need of immediate treatment." 50 P.S. § 7301(a). It then authorizes increasingly long periods of commitment for such persons, balanced by increasing due process protections in recognition of the significant deprivations of liberty at stake. **See In re A.J.N.**, 144 A.3d 130, 137 (Pa. Super. 2016) (highlighting MHPA's purpose as "an enlightened legislative endeavor to strike a balance between the state's valid interest in imposing and providing mental health treatment and the individual patient's rights") (quoting **In re Hutchinson**, [] 454 A.2d 1008, 1010 ([Pa.] 1982)); **In re Ryan**, 784 A.2d 803, 807 (Pa. Super. 2001) ("The legislative policy reflected in the [MHPA] is to require that strict conditions be satisfied before a court order for commitment shall be issued. Such a policy is in accord with the recognition that commitment entails a massive deprivation of liberty.") (quoting **Commonwealth v. Hubert**, [] 430 A.2d 1160, 1162 ([Pa.] 1981)). Accordingly, "[i]n applying the [MHPA,] we must take a balanced approach and remain mindful of the patient's due process and liberty interests, while at the same time permitting the mental health system to provide proper treatment to those involuntarily committed to its care." **In re S.L.W.**, 698 A.2d 90, 94 (Pa. Super. 1997).
>
> Under section 301(a):

A person is severely mentally disabled when, as a result of mental illness, his capacity to exercise self-control, judgment and discretion in the conduct of his affairs and social relations or to care for his own personal needs is so lessened that he poses a clear and present danger of harm to others or to himself.

50 P.S. § 7301(a). Section 301(b)(2) defines "clear and present danger" to oneself as follows:

Clear and present danger to himself shall be shown by establishing that within the past 30 days:

(i) the person has acted in such manner as to evidence that he would be unable, without care, supervision and the continued assistance of others, to satisfy his need for nourishment, personal or medical care, shelter, or self-protection and safety, and that there is a reasonable probability that death, serious bodily injury or serious physical debilitation would ensue within 30 days unless adequate treatment were afforded under this act; or

(ii) the person has attempted suicide and that there is the reasonable probability of suicide unless adequate treatment is afforded under this act. For the purposes of this subsection, a clear and present danger may be demonstrated by the proof that the person has made threats to commit suicide and has committed acts which are in furtherance of the threat to commit suicide; or

(iii) the person has substantially mutilated himself or attempted to mutilate himself substantially and that there is the reasonable probability of mutilation unless adequate treatment is afforded under this act. For the purposes of this subsection, a clear and present danger shall be established by proof that the person has made threats to commit mutilation and has committed acts which are in furtherance of the threat to commit mutilation.

*Id.* § 7301(b)(2).

Section 302 provides for emergency examination of persons, which

may be undertaken at a treatment facility upon the certification of a physician stating the need for such examination; or upon a warrant issued by the county administrator authorizing such examination; or without a warrant upon application by a physician

- 5 -

or other authorized person who has personally observed conduct showing the need for such examination.

*Id.* § 7302(a). Under section 302(b), a physician must examine the person "within two hours of arrival . . . to determine if the person is severely mentally disabled within the meaning of section 301 and in need of immediate treatment." *Id.* § 7302(b) (internal footnote omitted). If the physician so finds, then "treatment shall be begun immediately." *Id.* If not, then "the person shall be discharged and returned to such place as he may reasonably direct." *Id.* Section 302 allows a person to be committed up to 120 hours. *Id.* § 7302(d).

When a treatment "facility determines that the need for emergency treatment is likely to extend beyond 120 hours," section 303 provides that the facility may apply to have that involuntary commitment extended up to 20 days. *Id.* § 7303(a), (h). The facility files an application for such commitment with the court of common pleas, which then appoints an attorney for the person unless it appears "that the person can afford, and desires to have, private representation." *Id.* § 7303(b). "Within 24 hours after the application is filed, an informal hearing shall be conducted by a judge or . . . [MHRO.]" *Id.* The court or MHRO must keep the record generated by these proceedings for at least one year. *Id.* § 7303(c)(2). Where the judge or MHRO "determines that extended involuntary emergency treatment is necessary," a "certification shall be filed with the director of the facility and a copy served on the person, such other parties as the person requested to be notified pursuant to section 302(c), and on counsel." *Id.* § 7303(d)(1), (e).

Should an MHRO certify that an extended section 303 commitment is appropriate, the committed person may "petition to the court of common pleas for review of the certification." *Id.* § 7303(g). The court must hold a hearing "within 72 hours after the petition is filed unless a continuance is requested by the person's counsel." *Id.* "The hearing shall include a review of the certification and such evidence as the court may receive or require." *Id.* "If the court determines that further involuntary treatment is necessary and that the procedures prescribed by the [MHPA] have been followed, it shall deny the petition. Otherwise, the person shall be discharged." *Id.*

Section 304 of the MHPA allows for court-ordered involuntary treatment up to 90 days. *Id.* § 7304(g). Petitions for involuntary commitment under section 304 may be made for persons already committed under section 302 or 303, *see id.* § 7304(b), as well as for persons not currently committed, *see id.* § 7304(c). Subsection (a) describes who may be committed under section 304:

(1) A person who is severely mentally disabled and in need of treatment, as defined in section 301(a), may be made subject to court-ordered involuntary treatment upon a determination of clear and present danger under section 301(b)(1) (serious bodily harm to others), or section 301(b)(2)(i) (inability to care for himself, creating a danger of death or serious harm to himself), or 301(b)(2)(ii) (attempted suicide), or 301(b)(2)(iii) (self-mutilation).

(2) Where a petition is filed for a person already subject to involuntary treatment, it shall be sufficient to represent, and upon hearing to reestablish, that the conduct originally required by section 301 in fact occurred, and that his condition continues to evidence a clear and present danger to himself or others. In such event, it shall not be necessary to show the reoccurrence of dangerous conduct, either harmful or debilitating, within the past 30 days.

*Id.* § 7304(a)(1),(2) (internal footnote omitted). For persons already subject to treatment under sections 303, 304, or 305, the county administrator or the director of the facility may petition for court-ordered involuntary treatment. *Id.* § 7304(b)(1). For persons not already in involuntary treatment, "[a]ny responsible party may file a petition in the court of common pleas requesting court-ordered involuntary treatment for any person . . . for whom application could be made under [section 304](a)." *Id.* § 7304(c)(1).

As with section 303, the subject of the petition is entitled to assistance of counsel and a hearing on the petition. *Id.* § 7304(b), (c). If the person is currently committed, the hearing shall be held within five days. *Id.* § 7304(b)(4). If the person is not currently committed, then the person shall be served a copy of the petition "at least three days before the hearing." *Id.* § 7304(c)(4). Persons subject to such a hearing have the right "to the assistance of an expert in mental health," the right to silence,

"the right to confront and cross-examine all witnesses and to present evidence in his own behalf," and the right to a private hearing upon request. *Id.* § 7304(e)(1)-(4). "A stenographic or other sufficient record [of the hearing] shall be made[.]" *Id.* § 7304(e)(5). The court must impound the record, which may be "obtained or examined only upon the request of the person or his counsel or by order of the court on good cause shown." *Id.* As with section 303, "[t]he hearing shall be conducted by a judge or by a [MHRO] and may be held at a location other than a courthouse when doing so appears to be in the best interest of the person." *Id.* § 7304(e)(6). If the judge or MHRO finds by

> clear and convincing evidence that the person is severely mentally disabled and in need of treatment and subject to subsection (a), an order shall be entered directing treatment of the person in an approved facility as an inpatient or an outpatient, or a combination of such treatment as the director of the facility shall from time to time determine.

*Id.* § 7304(f). Inpatient treatment may be ordered "only after full consideration has been given to less restrictive alternatives." *Id.* As with section 303, if the determination is made by an MHRO, the person has a right to appeal the certification to the court of common pleas. *Id.* § 7109(b). This review process is identical to the section 303 certification review process. *Id.*

**Under section 305, the trial court may extend a period of involuntary treatment under section 304(g) or 305 for up to 180 days. *Id.* § 7305(a). To commit a person under section 305, the trial court must make the requisite findings in section 304(a) and (b), and must further find "a need for continuing involuntary treatment as shown by conduct during the person's most recent period of court-ordered treatment." *Id.* Persons found dangerous to themselves under section 301(b)(2) are "subject to an additional period of involuntary full-time inpatient treatment only if [they] ha[ve] first been released to a less restrictive alternative." *Id.* However, that requirement does not apply where the judge or MHRO determines "that such release would not be in the person's best interest." *Id.* As with sections 303 and 304, if the determination is made by MHRO certification, the person may seek review in the court of common pleas. *Id.* § 7109.**

*Id.* at 930-34 (emphasis added).

"In reviewing a trial court order for involuntary commitment, we must determine whether there is evidence in the record to justify the court's findings." *Id.* at 935. "Although we must accept the trial court's findings of fact that have support in the record, we are not bound by its legal conclusions from those facts." *Id.*

The issue in this case is whether there was sufficient evidence to warrant Appellant's continued involuntary treatment under section 305. To satisfy section 305, there must be "clear and convincing evidence of the need for continuing involuntary treatment as shown by conduct during the person's most recent period of court-ordered treatment." *Id.* "Our Supreme Court has defined clear and convincing evidence as 'testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue.'" *In re S.T.S., Jr.*, 76 A.3d 24, 38 (Pa. Super. 2013) (quoting *In re R.I.S.*, 36 A.3d 567, 572 (Pa. 2011)). "[T]he clear and convincing evidence test 'has been described as an 'intermediate' test, which is more exacting than a preponderance of the evidence test, but less exacting than proof beyond a reasonable doubt.'" *Id.* (quoting *Commonwealth v. Meals*, 912 A.2d 213, 219 (Pa. 2006).

Our analysis in *Commonwealth v. Romett,* 538 A.2d 1339 (Pa. Super. 1988), guides our review of section 305. In *Romett*, we reviewed a section

- 9 -

305 recommitment that was originally based on the appellant's violent behavior towards family members. Her commitment was extended three times before the section 305 hearing. At that hearing, she "violently slapped a nurse across the face." *Id.* at 1341. Her treating psychiatrist testified that "[she] had also recently shown assaultive behavior toward him." *Id.* The psychiatrist testified that she had a mental illness "manifested in delusions, poor impulse control, and beliefs that others are 'out to get her.'" *Id.* The psychiatrist opined that "cessation of [her] treatment would reasonably result in future assaultive behavior . . . [and she] posed a danger to others rather than to herself." *Id.* Based on this evidence, the trial court ordered her involuntarily committed for 30 days of inpatient treatment, followed by 150 days of outpatient treatment. We affirmed, holding:

> [F]or a person to be recommitted for an additional period of treatment, it need not be established that the person has inflicted or attempted to inflict serious bodily harm upon another within the past thirty days, as required for the original commitment. The [MHPA] specifically states that on recommitment it is not necessary to show that the patient committed an overt act within 30 days of the hearing. It is necessary however for the court to find that within the patient's most recent period of institutionalization, the patient's conduct demonstrated the need for continuing involuntary treatment, . . . *i.e.* his condition continues to evidence a clear and present danger to himself or others ....

*Id.* at 1341–42. We concluded that clear and convincing evidence supported the trial court's finding that the appellant posed a clear and present danger to others, since she exhibited violent conduct which resulted in her initial commitment, continued to do so during the commitment period, and had a

"diagnosis as a paranoid schizophrenic with delusions that others are threatening her, together with [a] prognosis that her assaultive behavior would continue without further treatment." *Id.*

Whereas the record in *Romett* showed that the appellant continued to pose a clear and present danger to others, the record herein demonstrates that Appellant continued to pose a clear and present danger to herself. Appellant was admitted to the Hospital on November 10, 2017 due to suicidal ideations. The court ordered further involuntary treatment on November 17, 2017 and an additional ninety days of involuntary commitment during a section 304 hearing on December 17, 2017. On March 6, 2018, the court convened a section 305 hearing to determine whether further involuntary commitment was necessary. Appellant's treating psychiatrist testified that Appellant constructed a noose on February 18, 2018, during her most recent period of hospitalization and just one day after one-on-one counseling ended. When a nurse discovered the noose, Appellant described the manner in which she intended to hang herself. Appellant's psychiatrist testified that in his ten years of experience, he had never had a patient attempt suicide so quickly after the discontinuation of treatment. He added that Appellant was non-compliant with all past safety plans, and that if she were discharged, she had nowhere to go and nobody to help her.

Thus, we agree with the trial court that there was clear and convincing evidence that (1) Appellant committed an overt act during her most recent

period of hospitalization, and (2) she continues to pose a clear and present danger to herself. This evidence was sufficient to uphold the order involuntarily committing Appellant to 180 days of inpatient treatment at a state hospital. We conclude that Appellant's challenge to the sufficiency of the evidence is devoid of merit.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/24/2018