**In re S.B.**

**Appeal of S.B.**

Superior Court of Pennsylvania.

Argued Sept. 12, 2000.

Filed Dec. 1, 2000.

3. This would also avoid the creation of controlling authority elevating the substantive terms of a statute ("A grandparent has standing to bring a petition for physical and legal custody of a grandchild") over express qualifying provisions ("This section applies to a grandparent who....."). I strongly disfavor this sort of precedent, as I believe that its application to other instances of legislative drafting is bound to yield idiosyncratic results; further, I believe that it complicates the already difficult task of legislative drafting.

Jonathan W. Crisp, Bellefonte, for appellant.

MaryAnn Kresen, State College, for appellee.

Before JOHNSON, TODD, and TAMILIA, JJ.

TODD, J.:

¶ 1 S.B. appeals the September 24, 1999 Order of the Centre County Court of Common Pleas denying her Petition for Review of the Certification for Extended Involuntary Emergency Treatment under Section 303 of the Mental Health Procedures Act (the "Act" or the "MHPA"), 50 P.S. § 7303. We affirm.

¶ 2 S.B. was admitted involuntarily to The Meadows Psychiatric Center (the "Meadows") on August 26, 1999 pursuant to Section 302[1] of the MHPA, 50 P.S. § 7302. Subsequently, S.B. converted her involuntary admission to a voluntary admission pursuant to Section 201 of the Act, 50 P.S. § 7201. On September 22, 1999, the Meadows filed an application for extended involuntary treatment of S.B. under Section 303 of the Act. A hearing was held on September 23, 1999 before a Men-

1. This section provides in part:

**§ 7302. Involuntary emergency examination and treatment authorized by a physician-not to exceed one hundred twenty hours**

(a) **Application for Examination.**—Emergency examination may be undertaken at a treatment facility upon the certification of a physician stating the need for such examination; or upon a warrant issued by the county administrator authorizing such examination; or without a warrant upon application by a physician or other authorized person who has personally observed conduct showing the need for such examination.

* * *

(b) **Examination and Determination of Need for Emergency Treatment.**—A person taken to a facility shall be examined by a physician within two hours of arrival in order to determine if the person is severely mentally disabled within the meaning of section 301 and in need of immediate treatment. If it is determined that the person is severely mentally disabled and in need of emergency treatment, treatment shall be begun immediately. If the physician does not so find, or if at any time it appears there is no longer a need for immediate treatment, the person shall be discharged and returned to such place as he may reasonably direct....

50 P.S. § 7302.

tal Health Review Officer ("MHRO"), who determined that S.B. was in need of continued treatment and recommended that S.B be involuntarily committed for a period of no more than twenty days. At the conclusion of the hearing, the trial court accepted the recommendation of the MHRO and certified S.B. for treatment in accordance with the MHRO's recommendation. On September 23, 1999, S.B. filed a Petition for Review of the Certification pursuant to 50 P.S. § 7303(g). On September 24, 1999, the trial court denied S.B.'s petition for review. This appeal followed.

¶ 3 S.B. presents the following issue for this Court's review: "Whether due process protections require a Mental Health Review Officer to make a finding of an overt act within the past thirty (30) days in a Mental Health Procedures Act § 303 hearing when an individual is currently treated under § 302 of the Act?" (Appellant's Brief at 4.) We note initially that although S.B. phrases her Statement of Questions Involved as a constitutional due process issue, her argument is essentially one of statutory interpretation only, based on the premise that Section 303 requires a demonstration of an overt act occurring within the past thirty days before an individual may be involuntarily committed, and that S.B.'s due process rights were violated because the MHRO "bypassed the procedural safeguards installed in Section 303 and applied, by default, the standard of proof applicable in Section 302 at [S.B.'s] Section 303 hearing." (Appellant's Brief at 13–14.) Indeed, in her brief S.B. states that "[i]n order to determine what the [L]egislature intended an individual's due process protections under §§ 302 and 303 to be, it is necessary to examine the statute." (Appellant's Brief at 10.) Thus, in the present case, we are called upon only to interpret the statute, not to determine whether due process requires a finding that an overt act occurred within the 30 days prior to commitment absent a statutory mandate.

■ ¶ 4 Turning now to S.B.'s contention that involuntary commitment under Section 303 requires a demonstration of an overt act within the past thirty days, we note that Section 303 of the Act provides in part:

> **§ 7303. Extended involuntary emergency treatment certified by a judge or mental health review officer-not to exceed twenty days**
>
> **(a) Persons Subject to Extended Involuntary Emergency Treatment.**—Application for extended involuntary emergency treatment may be made for any person who is being treated pursuant to section 302 whenever the facility determines that the need for emergency treatment is likely to extend beyond 120 hours. The application shall be filed forthwith in the court of common pleas, and shall state the grounds on which extended emergency treatment is believed to be necessary. The application shall state the name of any examining physician and the substance of his opinion regarding the mental condition of the person.
>
> * * *
>
> **(c) Informal Conference on Extended Emergency Treatment Application.**—(1) At the commencement of the informal conference, the judge or the mental health review officer shall inform the person of the nature of the proceedings. Information relevant to whether the person is severely mentally disabled and in need of treatment shall be reviewed, including the reasons that continued involuntary treatment is considered necessary. Such explanation shall be made by a physician who examined the person and shall be in terms understandable to a layman. The judge or

mental health review officer may review any relevant information even if it would be normally excluded under rules of evidence if he believes that such information is reliable. The person or his representative shall have the right to ask questions of the physician and of any other witnesses and to present any relevant information. At the conclusion of the review, ***if the judge or the review officer finds that the person is severely mentally disabled and in need of continued involuntary treatment, he shall so certify.*** Otherwise, he shall direct that the facility director or his designee discharge the person.

50 P.S. § 7303 (footnotes omitted) (emphasis added).

¶ 5 In *In re Hancock,* 719 A.2d 1053, 1055 (Pa.Super.1998), this Court held that the appropriate standard of proof for emergency involuntary treatment under Section 303 is clear and convincing evidence that a person is severely mentally disabled. "Severely mentally disabled" is defined under Section 301 of the Act, which reads in part:

(a) **Persons Subject.**—Whenever a person is severely mentally disabled and in need of immediate treatment, he may be made subject to involuntary emergency examination and treatment. ***A person is severely mentally disabled when, as a result of mental illness, his capacity to exercise self-control, judgment and discretion in the conduct of his affairs and social relations or to care for his own personal needs is so lessened that he poses a clear and present danger of harm to others or to himself.***

(b) **Determination of Clear and Present Danger.**—(1) Clear and present danger to others shall be shown by establishing that within the past 30 days the person has inflicted or attempted to inflict serious bodily harm on another and that there is a reasonable probability that such conduct will be repeated.... For the purpose of this section, a clear and present danger of harm to others may be demonstrated by proof that the person has made threats of harm and has committed acts in furtherance of the threat to commit harm.

(2) Clear and present danger to himself shall be shown by establishing that within the past 30 days:

(i) the person has acted in such manner as to evidence that he would be unable, without care, supervision and the continued assistance of others, to satisfy his need for nourishment, personal or medical care, shelter, or self-protection and safety, and that there is a reasonable probability that death, serious bodily injury or serious physical debilitation would ensue within 30 days unless adequate treatment were afforded under this act; or

(ii) the person has attempted suicide and that there is the reasonable probability of suicide unless adequate treatment is afforded under this act. For the purposes of this subsection, a clear and present danger may be demonstrated by the proof that the person has made threats to commit suicide and has committed acts which are in furtherance of the threat to commit suicide;

50 P.S. § 7301 (emphasis added).

¶ 6 S.B., in arguing that an involuntary commitment under Section 303 requires a finding of an overt act within the past thirty days, relies on the case of *In re S.C.,* 280 Pa.Super. 539, 421 A.2d 853 (1980), and cites 50 P.S. § 7301(b)(2)(ii), which, as shown above, requires "proof that the person has made threats to commit suicide and has committed acts which are in furtherance of the threat of suicide."

50 P.S. § 7301(b)(2)(ii). However, S.B. fails to address Section 301(b)(2)(i), which provides that a clear and present danger to oneself may be shown by establishing that within the past thirty days, "the person has acted in such a manner as to evidence that he would be unable, without care, supervision and the continued assistance of others, to satisfy his need for nourishment, personal or medical care, shelter, or self-protection and safety...." 50 P.S. § 7301(b)(2)(i). We believe that the evidence in the instant case satisfies the requirements set forth in Section 301(b)(2)(i).

¶ 7 At the Section 303 hearing, Roberta Kurland, a psychiatric nurse at the Meadows, testified that S.B. had been placed on checks for self-harm as a result of statements made on or around September 17, 1999 that "she was not clear on whether she could be safe or not or whether she was suicidal or not." (N.T., 9/23/99, at 12.) During this time period, S.B. refused to take her medication for depression and anxiety, and refused meals. (*Id.*) Her hygiene was poor. (*Id.* at 17, 421 A.2d 853.) S.B. was unable to "contract for safety", a procedure by which a patient agrees to approach the staff for help if she feels suicidal. (*Id.* at 16, 421 A.2d 853.) [2]

¶ 8 We also find that the language of this Court in *In re S.C.* suggests, despite S.B.'s argument to the contrary, that no overt act is necessary under Section 301(b)(2)(i). In *In re S.C.*, we stated:

> Our Commonwealth's Mental Health Procedures Act appears to follow the Supreme Court's admonition [in *O'Connor v. Donaldson,* 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975) ]. It requires that a person be "severely mentally disabled" and requires the court to find that the subject of the action is a "clear and present danger" to himself or others before a commitment for involuntary mental treatment may be justified. See § 301(a) of the Act, 50 P.S. § 7301(a). Other sections of the Act make it even more clear that commitments are not to be ordered except in the most serious circumstances. § 301(b)(1), 50 P.S. § 7301(b)(1), establishes that a finding of a "clear and present danger" must be based upon an overt act which occurred within the thirty (30) days prior to the hearing. If the act was allegedly dangerous to others, it must either have threatened or resulted in serious bodily harm. § 301(b)(2), 50 P.S. § 7301(b)(2). If the act is alleged to have been self-harmful, the Act requires that it be manifested by attempts at suicide or self-mutilation. § 301(b)(2), 50 P.S. § 7301(b)(2). ***If no overt act is shown, commitment may only be justified if:***
>
> "... the person has acted in such manner as to evidence that he would be unable, without care, supervision and the continued assistance of others, to satisfy his need for nourishment, personal or medical care, shelter, or self-protection and safety, and that there is a reasonable probability that death, serious bodily injury or serious physical debilitation would ensue within 30 days unless adequate treatment were afforded under the act." § 301(b)(2), 50 P.S. § 7301(b)(2).

*In re S.C.*, 421 A.2d at 856–857 (emphasis added). Thus, the language of this Court in *In re S.C.* clearly suggests that an individual may be involuntarily committed un-

2. Nurse Kurland also testified that on September 5, 1999 and several times after that, B. threatened that she "could kill someone if [she] ever let [her] anger out," and that on September 20, 1999, B. said "I know I'm capable of killing someone. I have so much unresolved anger in me." (N.T., 9/23/99, at 17.)

der Section 301(b)(2)(i) absent a showing of an overt act. *See also Commonwealth ex rel. Gibson v. DiGiacinto,* 497 Pa. 66, 70, 439 A.2d 105, 107 (1981) ("In the absence of such an overt act [involving attempted suicide or serious bodily harm to others to support a finding that appellant is a clear and present danger to himself or others], actions indicating inability to satisfy his own need for nourishment, personal or medical care, shelter, or self-protection and safety must be shown.")

¶ 9 Moreover, we find that the language of other decisions by this Court, while not directly on point, supports our holding that no overt act is required to involuntarily commit an individual under Section 303 of the Act. For example, in *Commonwealth v. Romett,* 372 Pa.Super. 41, 538 A.2d 1339 (1988), this Court, in concluding that no additional overt act within the past thirty days was necessary to commit an individual under Sections 7304(a) and 7305(a) of the Act, noted that Section 7301(b) "applies to the original emergency examination and commitment of a mentally disabled person." *Id.* at 1341.

¶ 10 Similarly, in *In re R.D.,* 739 A.2d 548 (Pa.Super.1999), this Court, citing Section 301(b)(2)(i) of the Act, found that evidence that the appellant was refusing to eat and refusing to take her psychotropic medication was sufficient proof "under the clear and convincing standard that [appellant] was 'severely mentally disabled' as that term is defined by the Act." *Id.* at 559.

¶ 11 Accordingly, we hold that where, as in the instant case, there is clear and convincing evidence that an individual presents a clear and present danger to himself, in that within the past thirty days the individual has acted in a manner which suggests that he would be unable to satisfy his need for nourishment, personal or medical care, self-protection and safety without the assistance of others, such that there is a reasonable probability that death, serious bodily injury, or serious physical debilitation would occur, no demonstration of an overt act is necessary to involuntarily commit the individual under Section 303 of the Act. This holding is the only logical result in that where an individual previously has been committed and under the supervision of mental health care providers, such as in the instant case, the goal of the providers is to prevent additional overt acts which present a clear and present danger to the individual. Their success in doing so does not mandate a finding that the individual is in no further need of treatment.

¶ 12 Order affirmed.