J-S69032-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE:  VALERIE F. SWARTZ | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  VALERIE F. SWARTZ | |
| | No. 1091 MDA 2015 |

Appeal from the Order Entered May 26, 2015
in the Court of Common Pleas of Columbia County
Orphans' Court at No.: 2012-OC-0000131-OA

BEFORE:  STABILE, J., DUBOW, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED SEPTEMBER 28, 2016**

Appellant, Valerie F. Swartz, appeals from the trial court order committing her to involuntary outpatient treatment for an additional ninety-day period pursuant to Section 305 of the Mental Health Procedures Act (MHPA), 50 P.S. § 7305 ("Additional periods of court-ordered involuntary treatment").  We affirm.

We take the following facts and procedural history from the supplemental report of the mental health review officer (MHRO) and our independent review of the certified record.  Prior to the order at issue in this case, four involuntary commitment orders had been filed against Appellant, resulting in two years of involuntary inpatient treatment at Warren State

_____

[*] Retired Senior Judge assigned to the Superior Court.

Hospital (WSH).[1]  On May 5, 2015, WSH filed a fifth petition for involuntary commitment pursuant to Section 305 of the MHPA.

> At the [May 19, 2015] hearing on the [WSH's] § 305 [p]etition, [Appellant's] treating psychiatrist for the past year, Promila Sood, M.D., testified that [Appellant] did not do well after admission (in May 2013), however, since January of this year she had made significant improvement to the point where [she] was identified as ready for discharge. (***See*** N.T. Mental Health Hearing, 5/19/15, at 2-3).  Dr. Sood indicated that [Appellant] initially was planning return to her own home county, but changed her plan and was looking for a placement in Warren County. (***See id.*** at 3).  Dr. Sood further testified that [Appellant] was suffering from a mental illness with a diagnosis of major depression, recurrent, in remission, and was prescribed certain psychotropic medications for treatment of her psychiatric condition.  (***See id.*** at 3-4).  In her testimony, Dr. Sood recommended a further period of involuntary inpatient treatment of up to ninety days, but stated that as soon as [Appellant] had arrangements set up for her housing, medications and outpatient treatment providers, she would be discharged from [WSH]. (***See id.*** at 3).  Dr. Sood felt that if [Appellant] were to be discharged from [WSH] without a place to live and medications, harm would come to her within thirty days as a result of her mental condition.  (***See id.*** at 11-12).  Dr. Sood also testified

_____

[1] The MHRO also observed that:

> [T]he behaviors of [Appellant] over the past twelve years, which resulted in her numerous involuntary commitments, consisted of multiple suicide attempts by means of hanging, overdosing[,] and swallowing foreign objects; self[-]abuse; and refusing to eat or drink.  The record[] . . . indicate[s] diagnoses consisting of major depression, recurrent; major depression, recurrent, with psychotic features; schizoaffective disorder, depressed; post[-]traumatic stress disorder; and anorexia nervosa.  [Appellant] also has a diagnosis of borderline personality disorder.

(MHRO Supplemental Report, 8/21/15, at 4-6) (footnotes and record citation omitted).

that WSH was the least restrictive treatment setting appropriate for [Appellant]. (**See id.** at 4).

[Appellant] testified that[,] while she was agreeable to staying in the hospital until such time as she found a place to live after her discharge from the hospital, she requested that it be a "voluntary commitment" rather than an involuntary commitment. (**Id.** at 10). [She] contended that she did not meet the criteria under the MHPA for an involuntary commitment, and accordingly, [she] argued that she should be permitted to remain in the hospital on a "voluntary commitment." (**Id**). However, there is no provision in the MHPA for a "voluntary commitment.[a]" [**See** 50 P.S. §§ 7301-7306.]

> [a] The MHPA has no provision authorizing a court to make a "voluntary commitment." However, § 201 of the MHPA (50 P.S. § 7201) does provide for what is typically called a "voluntary admission." In an effort to try to accommodate [Appellant] in her request for a "voluntary commitment," this MHRO in various exchanges during the hearing with [Appellant] and Dr. Sood incorrectly referred to a "voluntary commitment" when it should have been described as a "voluntary admission."

An involuntary commitment may be converted to a voluntary admission at any time during a period of involuntary hospitalization; provided, however, that the treating hospital is willing to accept the patient as a voluntary admission. [**See** 50 P.S. § 7201.] In fact, in the instant case, [Appellant] testified that she requested WSH to accept her as a voluntary admission, however, Dr. Sood refused because of [Appellant's] history and knowing [her]. . . . (**See** N.T. Mental Health Hearing, at 10-11).

(Supplemental Report, at 2-3) (most footnotes omitted) (record citations provided).

At the conclusion of the hearing, the MHRO recommended that Appellant receive further inpatient treatment. (**See** N.T. Mental Health Hearing, at 13-14). On May 20, 2015, Appellant appealed the MHRO's

recommendation to the trial court. On May 26, 2015, after reviewing the audio tapes of the hearing, the trial court determined that Appellant required further inpatient treatment at WSH for a period not to exceed ninety days. On June 23, 2015, the day Appellant was discharged,[2] (**see** Supplemental Report, at 9), she filed a timely notice of appeal.[3] On August 21, 2015, the MHRO filed a supplemental report.

Appellant presents one question for our review: "Whether the trial court lacked clear and convincing evidence from which it could conclude that [Appellant] suffered from a mental illness and presented a danger to herself or others so as to compel her involuntary treatment under the [MHPA]?" (Appellant's Brief, at 4) (unnecessary capitalization omitted).[4] Specifically, she maintains, "[o]nly persons who are proved by clear and convincing evidence to be a danger to themselves and or others such that there is a reasonable probability of imminent death or serious bodily injury may be

---

[2] "[A]lthough the commitment period[] authorized by the section 305 hearing[] in question ha[s] . . . expired, a live controversy still exists since involuntary commitment orders involve important liberty interests over which it behooves us to maintain appellate vigilance." **In re S.O.**, 492 A.2d 727, 733 (Pa. Super. 1985) (citations and footnote omitted).

[3] On July 7, 2015, Appellant filed a timely statement of errors complained of on appeal pursuant to the trial court's order. **See** Pa.R.A.P. 1925(b). On August 21, 2015, the trial court filed a Rule 1925(a) opinion in which it relied on the reasons stated in its May 19, 2015 order for involuntary treatment, and the August 21, 2015 supplemental report of the MHRO. **See** Pa.R.A.P. 1925(a).

[4] Appellee, WSH, did not file a brief in this matter.

subject to involuntary psychiatric treatment." (*Id.* at 7). Hence, Appellant argues that the court abused its discretion in affirming the recommendation of the MHRO and ordering involuntary treatment. (*See id.*). We disagree.

"In reviewing a trial court order for involuntary commitment, we must determine whether there is evidence in the record to justify the court's findings." *In re T.T.*, 875 A.2d 1123, 1126 (Pa. Super. 2005), *appeal denied*, 882 A.2d 1006 (Pa. 2005) (citation omitted). "Although we must accept the trial court's findings of fact that have support in the record, we are not bound by its legal conclusions from those facts." *Id.* (citation omitted).

Appellant was committed pursuant to 50 P.S. § 7305, which provides that following the expiration of a period of involuntary treatment, an additional period of treatment not exceeding 180 days may be ordered on findings as required by sections 304(a) and (b). *See* 50 P.S. § 7305(a). Pursuant to 50 P.S. § 7304, "in order for an individual to be involuntarily recommitted the petitioner must show by clear and convincing evidence that the individual continues to pose a 'clear and present danger' of harm to [her]self or to others." *Commonwealth v. Helms*, 506 A.2d 1384, 1387 (Pa. Super. 1986) (citing 50 P.S. § 7304(a), (f)). A clear and present danger to oneself may be shown by establishing, among other things, that "the person has acted in such manner as to evidence that [she] would be unable, without care, supervision and the continued assistance of others, to

satisfy [her] need for nourishment, personal or medical care, shelter, or self-protection and safety[.] . . ." 50 P.S. § 7301(b)(2)(i); ***see also In re S.B.***, 777 A.2d 454, 457-58 (Pa. Super. 2000).

> [W]here . . . there is clear and convincing evidence that an individual presents a clear and present danger to [herself], in that within the past thirty days the individual has acted in a manner which suggests that [she] would be unable to satisfy [her] need for nourishment, personal or medical care, self-protection and safety without the assistance of others, such that there is a reasonable probability that death, serious bodily injury, or serious physical debilitation would occur, no demonstration of an overt act is necessary to involuntarily commit the individual under Section 303 of the Act. This holding is the only logical result in that where an individual previously has been committed and under the supervision of mental health care providers, . . . the goal of the providers is to prevent additional overt acts which present a clear and present danger to the individual. Their success in doing so does not mandate a finding that the individual is in no further need of treatment.

***In re S.B.***, ***supra*** at 459.

Here, the MHRO observed that Dr. Sood, in making her recommendation for continued inpatient treatment until post-discharge housing arrangements were made for Appellant,

> was also taking into account, just as this MHRO did, [Appellant's] extensive prior history[,] consisting of multiple suicide attempts, self[-]abuse and [an] eating disorder[,] which resulted in numerous involuntary hospitalizations of [Appellant] over the past twelve years beginning in 2003.
>
> This MHRO is familiar with [Appellant,] having conducted a total of fourteen mental health commitment hearings for [her] over the past twelve (12) years, the first of which took place on January 10, 2003.

* * *

There was sufficient testimony presented at the May 19, 2015, § 305 hearing to establish by clear and convincing evidence that [Appellant] met the criteria for further involuntary inpatient treatment and that she would be a danger to herself if discharged at that time. Dr. Sood, [Appellant's] treating psychiatrist at WSH, testified that [Appellant] was suffering from a mental illness (major depression, recurrent, in remission); that WSH was the least restrictive treatment setting appropriate for [her], especially when she had no place to live if she were to be discharged; and that harm would come to her if she was discharged with no living arrangements in place. Furthermore, there was no assurance from WSH that if this MHRO discharged [Appellant] from the hospital, then WSH would be willing to accept her as an inpatient on a voluntary admission pursuant to § 201 of the MHPA and continue to provide inpatient treatment until [Appellant] completed preparation of her discharge plans (*i.e.*, a place to live, medications and outpatient treatment providers). . . .

* * *

. . . This MHRO chose not to take . . . a risk with [Appellant] by releasing her from the hospital with no discharge plan, and particularly, no place to live, and accordingly, recommended the up to ninety[-]day period of further involuntary inpatient treatment at WSH to allow [Appellant] the time and opportunity to develop and implement a proper discharge plan. . . .

(Supplemental Report, at 4, 7-9) (footnote omitted).

Based on the foregoing, and our independent review of the record, we conclude that they support the court's order that Appellant undergo continued involuntary treatment for a period not to exceed ninety days. *See* ***In re T.T.***, ***supra*** at 1126. The evidence established that, without a proper place to live after her discharge, Appellant would be a clear and present danger to herself, and that, therefore, involuntary treatment for a period of up to ninety days to allow for the provision of post-discharge

accommodations was required. **_See In re S.B._**, **_supra_** at 459. Appellant's issue does not merit relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/28/2016