J-S26029-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INT. OF: D.B.T. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: D.B.T. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 306 MDA 2021 |

Appeal from the Order Entered February 24, 2021
In the Court of Common Pleas of Centre County
Civil Division at No. 21-0254

BEFORE:  STABILE, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MURRAY, J.:                **FILED SEPTEMBER 10, 2021**

D.B.T. (Appellant) appeals the denial of his petition for review of the order extending his involuntary psychiatric treatment under the Mental Health Procedures Act (MHPA), 50 P.S. § 701, *et seq*.  After careful review, we conclude the trial court properly exercised its discretion and thus affirm.

The trial court detailed the underlying facts and procedural posture:

> This matter commenced when an application for involuntary emergency treatment under section 302 of the [MHPA[1] was filed] on February 12, 2021 by Nicole Clampet.  Ms. Clampet noted that Appellant stated he "couldn't be trusted" and that if he got sent home "something bad [would] happen."  Ms. Clampet noted that during her attempt to evaluate Appellant, he was largely unresponsive, except to say that "water boarders were really at it last night."  Ms. Clampet stated that when [Appellant met] with

---

[1] Section 302 provides (upon certification by a physician or authorization by the county mental health administrator), for involuntary emergency examination and treatment of a severely mentally disabled patient for up to 120 hours.  50 P.S. § 7302(a), (d).

Dr. Andrew Catherine [(Dr. Catherine) at the hospital], Appellant's responses were "disorganized" and [] he repeatedly discussed "gigabots." Although Appellant wanted to sign himself in for treatment, Dr. Catherine and Ms. Clampet believed [Appellant] lacked sufficient judgment and insight to make such a decision himself. Ms. Clampet noted **Appellant was refusing all medications and was a danger to himself and others** and therefore needed emergency psychiatric treatment.

Dr. Catherine completed the physician's examination portion of the [section 302] application. He noted that Appellant is a 30 year-old male with a **diagnosis of schizophrenia**. He was admitted because of **auditory hallucinations for *self-harm*** associated with his schizophrenia and for extreme paranoia and poor judgment. Given the **high risk** Appellant is towards himself and others, Dr. Catherine recommended Appellant remain in the hospital for treatment. In the treatment needed section, Dr. Catherine indicated **Appellant required "forced medication" for his psychosis**.

An application for **extended** involuntary treatment under **section 303 of the** [**MHPA**[2]] was completed on February 15, 2021. In the physician's examination part of the application, Dr. Catherine noted Appellant was defiant during the examination and presented with delusions of persecution. Additionally, Dr. Catherine noted that **Appellant has thoughts of self-harm and *was a danger to himself and to others***. In the treatment needed section, Dr. Catherine indicated Appellant required "inpatient psychiatric care in a locked unit." Dr. Catherine indicated by checking the relevant box that Appellant continued to be severely mentally disabled and in need of involuntary inpatient treatment.

The mental health review officer, Sonja Napier [(Napier)], filed a report/order on February 16, 2021 recommending the court find Appellant to be severely mentally disabled and in need of involuntary treatment. [Napier found, *inter alia*, clear and convincing evidence which established that, "as a result of mental illness, Appellant is a danger to himself." Report, 2/16/21, at 3

---

[2] Section 303 provides for extended involuntary emergency treatment of a person being treated pursuant to section 302 for a period not to exceed 20 days. 50 P.S. § 7303(a) and (h).

(unnumbered)].  [Napier] further recommended [Appellant] be committed to inpatient treatment at the Meadows Psychiatric Center or a designated treatment facility for a commitment period not to exceed twenty (20) days[, which, Napier found, was "the least restrictive treatment to treat [Appellant] adequately." *Id.*] On February 18, 2021, th[e] court entered an order finding Appellant to be in need of inpatient treatment pursuant to section 303 . . . and ordered that Appellant be committed to inpatient treatment at the Meadows Psychiatric Center or other designated, approved facility for a period not to exceed twenty (20) days.

On February 22, 2021, Appellant filed a petition for review of certification to involuntary inpatient mental health treatment arguing there was no evidence presented to support a reasonable conclusion that the lack of forced psychiatric treatment was likely to cause physical debilitation, serious bodily injury, or death within the thirty (30) day period [(we explain this requirement below)]. Appellant asserted the [psychiatric] facility did not meet its burden of establishing, by **clear and convincing evidence**, the forced psychiatric treatment was necessary or the least restrictive alternative to assure [Appellant's] imminent safety.  The court denied Appellant's petition for review of certification in an order entered February 24, 2021.  After listening to the audio recording of the hearing held on February 16, 2021, the court found the procedures prescribed by the Mental Health Procedures Act were followed.

The section 303 hearing was held at the Meadows Psychiatric Center on February 16, 2021.  Participating in the hearing were Lihui Tang, M.D. [(Dr. Tang)], psychiatrist for the Meadows; David Crowley, Esquire, Appellant's attorney via speakerphone; Mary Ann Kresan, Esquire, attorney for the Meadows via speakerphone; and Sonja Napier, the mental health review officer, via speakerphone.  **Dr. Tang was the treating physician for Appellant**.  Dr. Tang testified that Appellant has a diagnosis of schizophrenia and suffers from paranoia and psychosis.  **Appellant has been unable to provide for his basic daily needs without** [] **assistance and continues to remain a danger to his personal health, safety, and wellbeing.**  Dr. Tang stated Appellant had not taken his medication since 2018 and [Dr. Tang] intends to prescribe Appellant with antipsychotic [medications] for his schizophrenia. Dr. Tang testified that **Appellant is homeless and is unable to stay in shelters** because of his paranoia which leads him to feel

- 3 -

unsafe. Dr. Tang stated **it is *reasonably probable*** that, if untreated, **Appellant's behavior would lead to death, disability, or significant debilitation** within thirty days.

Appellant's proposed treatment is for inpatient treatment, medication management with a second opinion for forced medication, therapy, and discharge planning. Dr. Tang testified that inpatient treatment is the least restrictive treatment alternative for Appellant and if not afforded further treatment under the Mental Health Procedures Act, **Appellant would be at serious risk of harm to himself**.

Trial Court Opinion, 3/25/21, at 1-4 (emphasis and footnotes added).

Appellant timely appealed from the order denying his petition for review.[3] Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents a single issue for our consideration:

DID THE GOVERNMENT LACK SUFFICIENT EVIDENCE TO INVOLUNTARILY COMMIT APPELLANT TO INVOLUNTARY PSYCHIATRIC TREATMENT AS IT FAILED TO PRESENT CLEAR AND CONVINCING EVIDENCE OF CONDUCT SUPPORTING A REASONABLE PROBABILITY THAT DEATH OR SERIOUS PHYSICAL DEBILITATION OR BODILY INJURY WERE LIKELY IMMINENT IF HE WERE NOT FORCED INTO TREATMENT?

Appellant's Brief at 4.

We review involuntary treatment orders under the MHPA to "determine whether there is evidence in the record to justify the [hearing] court's findings." *In re S.M.*, 176 A.3d 927, 935 (Pa. Super. 2017) (citation omitted); *but see also id.* (an appellate court is not bound by a hearing court's legal

---

[3] On April 26, 2021, the trial court entered another order under section 303, extending Appellant's commitment for an additional period not to exceed 20 days. Appellant did not appeal that order.

conclusions derived from the facts). In reviewing a challenge to the sufficiency of the evidence supporting a determination under the MHPA, we have stated:

> Deference to the facts as found by the original factfinder is of particular importance in circumstances where the factfinders have specialized training or knowledge that makes them uniquely qualified to reach the findings and conclusions the General Assembly has entrusted them to make.

*In re Vencil Appeal of Pa. State Police*, 152 A.3d 235, 243 (Pa. 2017); *see also Harris v. No. 1 Contracting Corp.*, 258 A.2d 663, 664 (Pa. Super. 1969) (a reviewing court may not substitute its judgment as to the facts found by the fact-finder).

> We further recognize:

> [i]nvoluntary civil commitment of the mentally ill unquestionably constitutes a deprivation of liberty and may be accomplished only in accordance with due process protections. Accordingly, the petitioner in an involuntary commitment proceeding must prove the requisite statutory grounds by **clear and convincing evidence**.

*Commonwealth v. Helms*, 506 A.2d 1384, 1388 (Pa. Super. 1986) (emphasis added); *accord Commonwealth v. Blaker*, 446 A.2d 976, 978 (Pa. Super. 1981) (noting provisions of the MHPA are to be "construed strictly"). "In applying the [MHPA,] we must take a balanced approach and remain mindful of the patient's due process and liberty interests, while at the same time permitting the mental health system to provide proper treatment to those involuntarily committed to its care." *In re S.L.W.*, 698 A.2d 90, 94 (Pa. Super. 1997).

To find a person "severely mentally disabled" under section 303, section 301 of the MHPA provides:

> A person is severely mentally disabled when, as a result of mental illness, his capacity to exercise self-control, judgment and discretion in the conduct of his affairs and social relations or to care for his own personal needs is so lessened that he poses a **clear and present danger of harm** to others or to himself, as defined in subsection (b). . . .

50 P.S. § 7301(a) (emphasis added).

Subsection 301(b)(2) defines "clear and present danger" to oneself, in pertinent part, as:

> Clear and present danger to himself shall be shown by establishing that within the past 30 days:
>
> > (i) the person has acted in such manner as to evidence that he would be unable, without care, supervision and the continued assistance of others, to satisfy his need for nourishment, personal or medical care, shelter, or self-protection and safety, and that there is a **reasonable probability that death, serious bodily injury or serious physical debilitation would ensue within 30 days** unless adequate treatment were afforded under this act[.]

*Id.* § 7301(b)(2)(i) (emphasis added); *but see Helms*, 506 A.2d at 1388 ("the [MHPA] does not require 'threats of harm' and commission of 'acts in furtherance of the threat to commit harm' as a condition precedent for finding 'clear and present danger.'").

This Court, in construing the term "reasonable probability" contained in subsection 301(b)(2)(i), has stated:

> The petitioner must [] present evidence demonstrating a substantial likelihood that [a patient suffering from severe mental disability] will act violently if he is not involuntarily committed.

- 6 -

Mere speculation or conjecture that the individual could conceivably harm someone does not constitute a reasonable probability that aggressive conduct will recur.

*Helms*, 506 A.2d at 1389; *see also id.* ("Whether the individual is mentally ill and dangerous to others turns on the meaning of the facts which must be interpreted by expert psychiatrists and psychologists. The subtleties and nuances of psychiatric diagnosis render certainties beyond reach in most situations[.]" (citation omitted; emphasis and ellipses omitted)).

Here, Appellant argues the trial court abused its discretion in denying his petition for review of the section 303 commitment order, asserting:

> The state did not present clear and convincing evidence that involuntary psychiatric treatment was necessary to avoid likely death or serious bodily injury within the next 30 days. It offered only **sheer speculation** that [Appellant] **might** intentionally harm himself or others due to his psychosis and command hallucinations.

Appellant's Brief at 14 (emphasis added). Appellant further contends:

> To the extent the lower court's justification can be read as a mandate to protect society from an individual unwilling to take anti-psychotic medication to stop the voices telling him to harm others and that his psychiatrist fears he will harm someone if not treated; the justification for the commitment must fail for the **lack of an overt act in furtherance of harm** to self or others. To the extent the lower court's justification is based on a finding that the lack of pharmacological treatment made [Appellant] unable to satisfy his own need for nourishment, personal or medical care, shelter, or self-protection and safety; an overt act in furtherance of harm is not required but the state still needs a factual basis supporting the conclusion.

*Id.* at 16 (emphasis added; citation omitted).

At the section 303 hearing, Appellant's treating psychiatrist, Dr. Tang, testified that Appellant (a) has been diagnosed with schizophrenia "for years"; (b) is homeless and has no money or source of income; and (c) does not participate in any mental health treatment or take prescribed medications. N.T., 2/16/21, at 9-10; *see also id.* at 10 (opining "[Appellant] is not able to take care of himself."). Counsel for the petitioner, Center County Office of Mental Health, asked Dr. Tang: "Would there be a reasonable probability that [Appellant's] untreated behavior would lead to death, disability or serious physical debilitation within thirty days?" *Id.* at 11. Dr. Tang answered: "Yes, because [**Appellant**] **hears voices that tell him to hurt himself**. And he's a paranoid. That's why he left the [homeless] shelter [(in wintertime)]. He's too paranoid to stay in the community." *Id.* (emphasis added); *see also id.* at 13 ("Since we have brought [Appellant to] the hospital, he feels much safer. He's not as paranoid as in the community."). Also, when asked whether Appellant was at risk of harming himself, Dr. Tang stated, "I believe **there's a good opportunity he will do it**, because he is psychotic." *Id.* at 11-12 (emphasis added); *but see also id.* at 30 (conceding on cross-examination that Appellant did not take any action in furtherance of his threats to self-harm). Dr. Tang predicted Appellant's psychiatric condition would improve if the court ordered that he remain at the hospital for 20 days. *Id.* at 14. Finally, Dr. Tang explained that extended treatment constituted the "least restrictive environment" possible under the circumstances. *Id.*

The record also reflects that another physician, Dr. Catherine, previously assessed Appellant and reached essentially the same conclusions as Dr. Tang. Specifically, when Appellant was admitted for involuntary treatment under section 302 in February 2021, Dr. Catherine found Appellant was "severely mentally disabled," **posed a "high risk" of harm** to himself and others, and had auditory hallucinations for self-harm. *See* Trial Court Opinion, 3/25/21, at 2. Dr. Catherine recommended that Appellant receive "forced medication" because he had refused to take antipsychotic medication for his schizophrenia since 2018. *Id.*

The above evidence supports the trial court's extension of Appellant's involuntary treatment because it clearly and convincingly demonstrated that Appellant was severely mentally disabled, posed a clear and present danger to himself, and there was a reasonable probability of serious harm or death if treatment was not extended. *See In Appeal of H.D.*, 698 A.2d 90, 94 n.4 (Pa. Super. 1997) (finding appellant's plan to jump off a bridge was sufficient to support her 302 commitment, rejecting her characterization of the plan as a mere suicidal "idea" that did not establish intent, and stating that after "thorough review of the record, we refuse to second-guess the conclusion of the emergency medical and mental health professionals that [appellant] presented a clear and present danger of harm to herself."). *See also Helms*, 506 A.2d at 1387; 1389-90 (upholding involuntary commitment of paranoid schizophrenic and rejecting his sufficiency challenge where he posed a "clear

and present danger" to others, and stating it is "well-documented that without anti-psychotic medication, a schizophrenic's risk of relapse into a psychotic state is greatly increased."); **In re R.D.**, 739 A.2d 548, 559 (Pa. Super. 1999) (court did not err in denying petition for review of involuntary treatment under section 303 where patient was severely mentally disabled and posed a clear and present danger to herself by refusing to eat or take prescribed psychotropic medications).

Finally, case law undermines Appellant's emphasis on the fact he did not commit an "overt act." **See In re S.B.**, 777 A.2d 454, 458 (Pa. Super. 2000) (rejecting claim that "involuntary commitment under section 303 requires a finding of an overt act within the past 30 days," and noting subsection 301(b)(2)(i), **supra**, contains no such requirement); **see also Helms**, 506 A.2d at 1388 ("the [MHPA] does not require 'threats of harm' and commission of 'acts in furtherance of the threat to commit harm' as a condition precedent for finding 'clear and present danger.'").

Consistent with the foregoing, we affirm the denial of Appellant's petition for review of the order extending his involuntary psychiatric treatment.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 09/10/2021