J-A29028-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| EXPUNGEMENT OF RECORD OF:<br>H.M.J. | :<br>:<br>: | IN THE SUPERIOR COURT OF<br>PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: H.M.J. | :<br>: | |
| | : | |
| | : | |
| | : | |
| | : | No. 14 WDA 2022 |

Appeal from the Order Entered October 14, 2021
In the Court of Common Pleas of Beaver County Civil Division at No(s):
No. 10228-2021

BEFORE: BENDER, P.J.E., OLSON, J., and PELLIGRINI, J.

MEMORANDUM BY OLSON, J.:                    **FILED: JUNE 23, 2023**

Appellant, H.M.J., appeals from the October 14, 2021 order denying her petition to expunge the record of her involuntary mental health commitment pursuant to 50 P.S. § 7302. We affirm.

The facts and procedural history of this case are as follows. On November 24, 2019, Appellant arrived at her parents' residence in Center Township, Beaver County, Pennsylvania, with her boyfriend. N.T. Hearing, 10/14/21, at 53; *see also* Appellant's Petition, 2/16/21, at *1 (unpaginated). An altercation ensued between Appellant's boyfriend and Appellant's parents, causing the police to be summoned to the residence. *Id.* Thereafter, Appellant was taken to Heritage Valley Medical Center ("Medical Center") in Brighton Township, Beaver County, Pennsylvania, for an evaluation. *Id.* at *2. Later, Appellant's mother arrived at the Medical Center. *Id.* At that time, Appellant's mother requested that Appellant be involuntarily committed. In

support of that request, Appellant's mother claimed that, within the last 30 days, Appellant:

> [j]umped out of a moving vehicle — does [not] care if she gets killed or hurt. Started with a toxic abusive relationship — leaving at all hours of the night. [J]ust walking down middle of the road [three] — [four] times at night. [L]eft college at [G]reensburg took an [U]ber until she did [not] have any more money and was left [in] downtown Pittsburgh at [2:00 a.m.] not having anyway to get anywhere. She tells us over and over she does [not] want to be here[, that] she is a disappointment and does [not] deserve anything. Campus police were checking on her because of her outrage.

Application for Involuntary Emergency Examination & Treatment, 11/24/19, at Part 1. Dr. Joseph Martibeller evaluated Appellant and observed that she evidenced "poor insight [and] judgment, [engaged] with dangerous behaviors recently[, and] stated [a] passive death wish." **Id.** at Part VI. Based upon the foregoing, Dr. Martibeller determined that Appellant needed "inpatient psychiatric admission treatment." **Id.** Accordingly, Appellant was involuntarily committed to the Medical Center, and was released after 72 hours.

On February 16, 2021, Appellant filed a petition seeking expungement of her record of involuntary commitment. In the petition, Appellant averred that "there were not reasonable grounds to believe that [she] was severely mentally disabled and in need of immediate treatment as required for commitment." Appellant's Petition, 2/16/21, at *4 (unpaginated). In addition, Appellant claimed that "a [Section] 302 commitment was improper under the circumstances a[s it] was merely utilized as a mechanism to

separate [Appellant] from her boyfriend[, against] whom [Appellant's] parents [bore] animosity." **Id.** Thus, Appellant asked the trial court to, *inter alia*, vacate her involuntary commitment, expunge the records regarding her involuntary commitment, and "[r]estore [Appellant] any and all of her civil rights which may have been impaired as a result of her commitment." **Id.** at *5-*6. Although not expressly stated in Appellant's petition, it is clear that she sought relief pursuant to 18 Pa.C.S.A. § 6105(f)(1) and 18 Pa.C.S.A. § 6111.1(g)(2) of the Pennsylvania Uniform Firearms Act ("UFA").

The trial court held a hearing on Appellant's petition on October 14, 2021, as Appellant's petition was opposed by the Pennsylvania State Police ("PSP"). At the outset of the hearing, Appellant's counsel introduced the Section 302 commitment record into evidence, as well as another medical record from the Medical Center. **See** N.T. Hearing, 10/14/21, at 4-5. In addition, Appellant, as well as Appellant's expert, Dr. Allan Pass, testified. Importantly, PSP objected to various aspects of Dr. Pass's testimony as irrelevant to whether there was sufficient evidence to support Appellant's Section 302 commitment. **Id.** at 11-12. The trial court sustained PSP's objection, indicating that it would not consider Dr. Pass's testimony with respect to the issue of sufficiency. **Id.** at 14. The hearing concluded and, that day, the trial court issued an order denying Appellant's request for expungement pursuant to 18 Pa.C.S.A. § 6111.1(g)(2), holding that sufficient evidence supported Appellant's commitment. **Id.** at 81; **see also** Trial Court Order, 10/14/21, at 1, *citing* **In re. Vencil**, 152 A.3d 235 (Pa. 2017). The

- 3 -

trial court, however, restored Appellant's right to possess a firearm pursuant to 18 Pa. C.S.A. § 6105(f)(1).  N.T. Hearing, 10/14/21, at 82; **see also** Trial Court Order, 10/14/21, at 1.  This timely appeal followed.

Appellant raises the following issues on appeal:[1]

> 1. Whether the [trial] court erred in determining that Appellant [] waived her appellate rights for failure to file a timely post-trial motion pursuant to Pa.R.C.P. 227.1?
>
> 2. Whether the [trial] court erred in denying [Appellant's] petition for expungement of record of involuntary commitment because the evidence and information available was insufficient to sustain an involuntary commitment under the law?

Appellant's Brief at 4.

In her first issue, Appellant argues that the trial court erred in finding that she "waived her appellate rights" because she failed to file a post-trial motion.  Trial Court Order, 11/9/21, at *1 (unpaginated).  In particular, the trial court held that, pursuant to Pa.R.C.P. 227.1, Appellant needed to file a post-trial motion to preserve her appellate claims because the "substance of the action" was like a trial, necessitating the filing of a post-trial motion.  **Id.** To support its finding that the "substance" of the instant action was trial-like, the court cited to the fact that a hearing was held, "during which Appellant offered exhibits into evidence and examined two witnesses," and the court

_____

[1] We have reordered Appellant's appellate issues for ease of discussion and disposition.

- 4 -

"relied upon the hearing and documentary evidence when it denied Appellant relief." *Id.* at *2.

Rule 227.1 of the Pennsylvania Rules of Civil Procedure provides, in relevant part, as follows:

> (c) Post-trial motions shall be filed within ten days after
>
> > (1) verdict, discharge of the jury because of inability to agree, or nonsuit, in the case of a jury trial; or
> >
> > (2) notice of nonsuit or the filing of the decision in the case of a trial without jury.

Pa.R.C.P. 227.1(c)(1)-(2). A comment to Rule 227.1, however, states that a "motion for post-trial relief may not be filed to matters governed exclusively by the rules of petition practice." *Id.*, cmt. A "petition" is defined as "any other application which is designated by local rule, numbered Local Rule 206.1(a), to be governed by Rule 206.1 *et seq*." Pa.R.C.P. 206.1(a)(2). In Beaver County Local Rule 206.1(a)(9), it states that "[a]ny [] application requesting a [r]ule to [s]how [c]ause under any rule, statute, or case authority" is "included in the definition of '[p]etition.'" *Id.* Local Rule 206.1 also provides that

> [e]ach petition filed with the [c]ourt shall contain a proposed order for the [c]ourt's consideration. Said proposed order shall follow the provisions of Pa.R.C.P. 206.5, with alternative provisions in paragraph (d)(4) and (5), so that the [c]ourt may determine whether to proceed with depositions or an evidentiary hearing on disputed issues of material fact.

*Id.*

Herein, Appellant's initial application was entitled "petition for expungement of record of involuntary commitment" and sought relief pursuant to Sections 6105(f)(1) and 6111.1(g)(2) of the Pennsylvania UFA. In her prayer for relief, Appellant requested, *inter alia*, the trial court to:

> Issue a [r]ule upon the [PSP, the] Medical Center, and such other agencies as the [c]ourt deems appropriate, to show cause why [Appellant] should not be granted the relief requested herein; that is, that her commitment should not be vacated and her official and unofficial records should not be expunged and destroyed.

Appellant's Petition, 2/16/21, at *5 (unpaginated). Upon receipt of Appellant's submission, the trial court issued an order stating, in relevant part, as follows:

> 1. A **[r]ule is issued** upon . . . [PSP] and [the] Medical Center, to show cause why [Appellant] is not entitled to the relief requested.
>
> 2. [PSP and the Medical Center] shall file an Answer to the **Petition** within [20] days of service[.]
>
> 3. The **Petition** shall be decided by Pa.R.C.P. 206.7.

Trial Court Order, 2/16/21, at 1 (emphasis added). In compliance with the trial court's order, the PSP filed an Answer "in response to the 'Petition for Expungement of Record of Involuntary Commitment (Petition),'" disputing various facts set forth therein. PSP's Answer, 5/5/21, at *1 (unpaginated). Thereafter, the parties conducted discovery, as permitted by the trial court's February 16, 2021 order and, on October 14, 2021, the trial court conducted an evidentiary hearing. **See** Trial Court Order, 2/16/21, at 1; **see also** N.T. Hearing, 10/14/21, at 1-83.

Upon review, we conclude that this matter was "governed exclusively by the rules of petition practice" and, as such, Appellant was not permitted to file a post-trial motion. Pa.R.C.P. 227.1, cmt. First and foremost, Appellant filed an application seeking relief pursuant to Sections 6105(f)(1) and 6111.1(g)(2) of the Pennsylvania UFA, both of which require an individual to seek relief through the filing of a petition. *See* 18 Pa.C.S.A. § 6105(f)(1) ("Upon application to the court of common pleas under this subsection by an applicant subject to the prohibitions under subsection (c)(4), the court may grant such relief as it deems appropriate if the court determines that the applicant may possess a firearm without risk to the applicant or any other person."); 18 Pa.C.S.A. § 6111.1(g)(2) ("A person who is involuntarily committed pursuant to section 302 of the Mental Health Procedures Act may petition the court to review the sufficiency of the evidence upon which the commitment was based."). In fact, this Court has previously held that post-trial motions are not permitted in matters where relief has been requested pursuant to either Section 6105(f)(1) or Section 6111.1(g)(2). *See In re M.B.*, 2018 WL 1387082, at *8, n.6 (Pa. Super. Mar. 20, 2018) (unpublished memorandum) (explaining that the PSP was "not permitted to file a post-trial motion" because relief was sought pursuant to Section 6111.1(g)(2)).

Moreover, a review of the record clearly reveals that, from the outset, the parties and the court treated the matter as one governed by petitions practice and that this continued through the October 14, 2021 hearing.

Indeed, in Appellant's initial application, entitled "petition for expungement of record of involuntary commitment," Appellant asked the trial court to issue a rule to show cause. Hence, Appellant's initial application met the definitional requirements of a "petition" as set forth in Beaver County Local Rule 206.1(a)(9). Thereafter, in its initial order, the trial court issued a rule to show cause, specifically directing an "Answer" be filed in response to Appellant's "[p]etition," and further noted that the "[p]etition" would be decided in accordance with Pa.R.C.P. 206.7. Trial Court Order, 2/16/21, at 1; *see* Pa.R.C.P. 206.7 (explaining the procedure after an issuance of a rule to show cause in petition's practice). In addition, as permitted by Beaver County Local Rule 206.1(a), the parties took discovery and, eventually, participated in an "evidentiary hearing on disputed issues of material fact." *Id*. Thus, Appellant's decision to "offer exhibits into evidence and examine[] two witnesses" did not transform the "substance" of the October 14, 2021 hearing into a trial. Trial Court Order, 11/9/21, at *1-*2. To the contrary, such actions were consistent with Beaver County Local Rule 206.1(a). Based upon the foregoing, we conclude that the trial court erroneously found that Appellant waived her appellate issues for failure to file a post-trial motion. Accordingly, we shall address the merits of Appellant's claim.

In her second issue, Appellant contends there was insufficient evidence to support her involuntary commitment. In particular, Appellant argues that, during the October 14, 2021 hearing, Dr. Pass demonstrated that

there was a complete dearth of any independent evidence of intent to self-harm in the record, there was a failure of the committing physicians to make appropriate inquiries into [Appellant's mother's] point of reference to the allegations, and there was an absence of a direct correlation between [Appellant's] mother's statement and Appellant's alleged self-harm.

Appellant's Brief at 24. Accordingly, Appellant asks this Court to reverse the trial court's determination and "order the expungement of [her] record of involuntary commitment pursuant to Section 6111.1(g)(2) of the UFA." **Id.** at 25.

Our Supreme Court recently explained:

The legislature enacted Pennsylvania's Mental Health Procedures Act (MHPA), 50 P.S. §§ 7101-7503, to establish procedures "to assure the availability of adequate treatment to persons who are mentally ill." 50 P.S. § 7102. The MHPA's provisions "shall be interpreted in conformity with the principles of due process to make voluntary and involuntary treatment available where the need is great and its absence could result in serious harm to the mentally ill person or to others." **Id.** One treatment option the MHPA governs is involuntary emergency examination and treatment, commonly referred to as a "302 commitment." **See** 50 P.S. § 7302. Section 302 of the MHPA provides that an involuntary emergency examination of a person may occur upon a physician's certification. 50 P.S. § 7302(b). If the examining physician determines "that the person is severely mentally disabled and in need of emergency treatment, treatment shall be begun immediately" and may continue for up to 120 hours. 50 P.S. § 7302(b), (d); **see also** 50 P.S. § 7301(a) (providing a person who is "severely mentally disabled and in need of treatment" may be subject to "involuntary emergency examination and treatment").

\*\*\*

The Pennsylvania Uniform Firearms Act of 1995 (UFA), 18 Pa.C.S. §§ 6101- 6128, makes it unlawful for a person who has been involuntarily committed under Section 302 to "possess, use, control, sell, transfer or manufacture" a firearm or to

- 9 -

obtain a license to conduct any of those activities. 18 Pa.C.S. § 6105(a)(1), (c)(4). However, the UFA provides two ways for the subject of a 302 commitment to obtain relief from the Section 6105(a)(1) firearm restrictions. The one at issue in this case is a court-ordered expungement of the 302 commitment record under Section 6111.1(g)(2), which provides:

(g) Review by court.—

***

(2) A person who is involuntarily committed pursuant to section 302 of the Mental Health Procedures Act may petition the court to review the sufficiency of the evidence upon which the commitment was based. If the court determines that the evidence upon which the involuntary commitment was based was insufficient, the court shall order that the record of the commitment submitted to the Pennsylvania State Police be expunged. A petition filed under this subsection shall toll the 60-day period set forth under section 6105(a)(2).

***

18 Pa.C.S. § 6111.1(g)(2).[fn*2]

This Court clarified the appropriate review of a Section 6111.1(g)(2) petition to expunge a 302 commitment record based on the sufficiency of the evidence to support the 302 commitment in [**Vencil**, **supra**]:

[U]nder section 6111.1(g)(2), a challenge to the sufficiency of the evidence to support a 302 commitment presents a pure question of law, and the court's sole concern is whether, based on the findings recorded by the physician and the information he or she relied upon in arriving at those findings, the precise, legislatively-defined prerequisites for a 302 commitment have been satisfied and are supported by a preponderance of the evidence. We emphasize that the trial court's review is limited to the findings recorded by the physician and the information he or she relied upon in arriving at those findings, and requires deference to the physician, as the original factfinder, as the physician examined and evaluated the individual in the first instance, was able to observe his or

- 10 -

> her demeanor, and has particularized training, knowledge and experience regarding whether a 302 commitment is medically necessary.
>
> *Vencil*, 152 A.3d at 246 (rejecting *de novo* review subject to clear and convincing burden of proof for Section 6111.1(g)(2) petitions).
>
> ---
>
> [fn*2] The second means for the subject of a 302 commitment to obtain relief from the Section 6105(a)(1) firearms restrictions is to petition the trial court to grant relief based on a finding that "the applicant may possess a firearm without risk to the applicant or any other person."  18 Pa.C.S. § 6105(f)(1).

*In re B.W.*, 250 A.3d 1163, 1165–1167 (Pa. 2021) (parallel citations and some footnotes omitted) (footnotes in original).

"An individual is severely mentally disabled if, as a result of mental illness, his capacity . . . to care for his own personal needs is so lessened that he poses a clear and present danger of harm . . . to [herself]."  *Vencil*, 152 A.3d at 237, *quoting* 50 P.S. § 7301(a).  An individual is a "clear and present danger" if, within the past 30 days:

> (i) the person has acted in such manner as to evidence that he would be unable, without care, supervision and the continued assistance of others, to satisfy his need for nourishment, personal or medical care, shelter, or self-protection and safety, and that there is a reasonable probability that death, serious bodily injury or serious physical debilitation would ensue within 30 days unless adequate treatment were afforded under this act[.]

50 P.S. § 7301(b)(2)(i).  Importantly, if subsection 7301(b)(2)(i) applies, "no demonstration of an overt act is necessary to involuntarily commit the individual under Section 303 of the [MHPA]."  *In re S.B.*, 777 A.2d 454, 459 (Pa. Super. 2000).

Herein, the trial court explained its rationale for denying Appellant's expungement request during the October 14, 2021 hearing. Initially, the trial court highlighted the circumstances leading up to Appellant's involuntary commitment, including the altercation between her boyfriend and parents, as well as Mother's statement set forth within the Section 302 commitment application. Then, the court noted that, following Mother's application, the physician on duty, Dr. Martibeller, evaluated Appellant and found "that her behaviors were a danger to herself" necessitating commitment pursuant to 50 P.S. § 7301(b)(2)(i). N.T. Hearing, 10/14/21, at 80. Finally, the court reviewed Dr. Pass's testimony. At the outset, the court stated it found Dr. Pass to be credible with respect to his testimony that Appellant "did not suffer, at least currently, from any type of . . . psychopathology." ***Id***. The court noted, however, that Dr. Pass admitted that

> a skilled clinician would be able to determine whether a 302 would be necessary, and that he further agreed that a face-to-face evaluation is important so that there [is] a determination of whether there was lying or untruthfulness, and that the behaviors like walking down the [middle of a] road . . . [and] jumping out of a car would pose a threat of harm, and that statements such as I do[ not] care and I do[ not] deserve anything are evidence of a depressed [mental state].

***Id***. at 81. Accordingly, the court stated:

> I find that [Appellant's] request for expungement pursuant to [Section] 6111.1(g)(2) is denied. Upon review of the [c]ourt by a preponderance of the evidence, I find that the commitment of [Appellant] was made to be sufficient, and I was relying on the requirements of the ***Vencil*** case. Unfortunately, I have to look at it through, through that scope. I know that [is] not what [Appellant] wanted to hear.

*Id.*

Upon review, we preliminarily note that the trial court properly disregarded Dr. Pass's expert testimony with respect to his assessment of whether there was sufficient evidence to support Appellant's Section 302 commitment. Indeed, as clearly stated in *Vencil*, Dr. Pass's testimony was utterly irrelevant to this inquiry at the October 14, 2021 hearing, as well as on appeal. *See Vencil*, 152 A.3d at 239, n.3 and 246; (confining its "statement of the case to the facts and findings as recorded by the physician who evaluated Vencil . . . because any other evidence or information is irrelevant for purposes of a [S]ection 6111.1(g)(2) review"); *see also B.W.*, 250 A.3d at 1169, n.3 (explaining that B.W. and his girlfriend's testimony was "irrelevant to a Section 6111.1(g)(2) review under *Vencil*" and would not be considered by the court).

Moreover, we conclude that the trial court correctly determined that, based upon the information provided to the Dr. Martibeller, as well as Dr. Martibeller's evaluation, there was sufficient evidence to support Appellant's involuntary commitment. Indeed, Mother's statement demonstrated that, within the last 30 days, Appellant jumped out of a moving vehicle, walked down the middle of a road at night, and was in an abusive relationship. Application for Involuntary Emergency Examination & Treatment, 11/24/19, at Part 1. Hence, Mother's statement showed that Appellant engaged in risky behavior, demonstrated disregard for her personal safety, and exhibited behavior that could result in death or serious bodily injury. *See* 50 P.S.

- 13 -

§ 7301(b)(2)(i).  In addition, Dr. Martibeller personally evaluated Appellant and concluded that she demonstrated "poor insight [and] judgment" as well as a "passive death wish" necessitating "inpatient psychiatric admission treatment."  Application for Involuntary Emergency Examination & Treatment, 11/24/19, at Part VI.  In essence, Dr. Martibeller identified, based on his interview and Appellant's Section 302 commitment application, a call for professional supervision and psychiatric treatment to address Appellant's need for self-protection and diminish an established probability that Appellant's behavior would lead to her death or serious bodily injury.  The trial court, as required, viewed this finding in a light most favorable to the physician and, in so doing, concluded that there was sufficient evidence that Appellant was "severally mentally disabled" pursuant to Section 7301(b)(2)(i).  We discern no abuse of discretion in making such a determination.

Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/23/2023