538 A.2d 1339

**COMMONWEALTH of Pennsylvania**

**v.**

**Denise ROMETT, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 29, 1987.

Filed March 11, 1988.

42

Carol A. Shelly, Assistant Public Defender, Doylestown, for appellant.

Before CAVANAUGH, BECK and HESTER, JJ.

BECK, Judge:

Appellant, involuntarily committed to a psychiatric facility since February, 1986, now challenges the latest of her successive recommitments under the Mental Health Procedure Act, 50 Pa.Stat.Ann. §§ 7101–7503 (Purdon Supp. 1987). Appellant argues that her recommitment was based on insufficient evidence and that the lower court improperly considered appellant's original assaultive behavior. Since neither claim has merit, we affirm the order of the trial court authorizing an additional period of institutionalization for appellant.

Appellant, who has a history of hospitalizations for mental illness, was involuntarily committed in February, 1986, as a result of assaultive behavior towards family members. This original commitment was extended three times before the hearing at issue, which was held in March, 1987. Testimony presented at this hearing established that, just before the hearing began, appellant violently slapped a nurse

across the face. The slap broke the nurse's glasses. The glasses cut her nose before flying across the room. This assault occurred after the nurse told appellant that appellant could not smoke before the hearing.

Appellant's treating psychiatrist then testified that appellant had also recently shown assaultive behavior toward him. During a discussion of appellant's possible recommitment, appellant became angry and slapped the psychiatrist's loose-leaf binder toward his face. Appellant then threatened to "do something" but had not "decided what it will be." The psychiatrist also testified that appellant suffers from schizophrenia and paranoia. According to the psychiatrist, appellant's illness is manifested in delusions, poor impulse control, and beliefs that others are "out to get her." He testified that a cessation of appellant's treatment would reasonably result in future assaultive behavior. He testified that appellant posed a danger to others rather than to herself. Following this testimony, appellant was involuntarily committed for thirty days of in-patient treatment, to be followed by one hundred-fifty days of out-patient treatment.

■ Appellant asserts that this testimony was insufficient in that it did not establish that appellant had, within thirty days before the hearing, inflicted or attempted to inflict serious bodily injury on another, Section 7301(b) of the Act.[1]

1. Section 7301 provides in part as follows:
(a) Persons subject.—Whenever a person is severely mentally disabled and in need of immediate treatment, he may be made subject to involuntary emergency examination and treatment. A person is severely mentally disabled when, as a result of mental illness, his capacity to exercise self-control, judgment and discretion in the conduct of his affairs and social relations or to care for his own personal needs is so lessened that he poses a clear and present danger of harm to others or to himself.
(b) Determination of clear and present danger.—(1) Clear and present danger to others shall be shown by establishing that within the past 30 days the person has inflicted or attempted to inflict serious bodily harm on another and that there is a reasonable probability that such conduct will be repeated.... For the purpose of this section, a clear and present danger of harm to others may be demonstrated by proof that the person has made threats of harm

However, appellant's reliance on § 7301(b) is misplaced. That section of the Act applies to the original emergency examination and commitment of a mentally disabled person. The hearing and order at issue concerned appellant's third additional period of treatment. Therefore, section 7305, not 7301, is controlling.

Section 7305 provides that, at the expiration of a period of court-ordered involuntary treatment, the court may order treatment for an additional period. This order must be entered upon a hearing on the findings required by § 7304(a) and (b) and on the "further finding of a need for continuing involuntary treatment as shown by conduct during the person's most recent period of court-ordered treatment." 50 Pa.Stat.Ann. § 7305(a) (Purdon Supp.1987). The applicable paragraph of § 7304(a) referred to in § 7305 provides as follows:

"(2) Where a petition is filed for a person already subject to involuntary treatment, it shall be sufficient to represent, and upon hearing to reestablish, that [ (1) ] the conduct originally required by section [7301] in fact occurred, and that [ (2) ] his condition continues to evidence a clear and present danger to himself or others. In such an event, *it shall not be necessary to show the reoccurrence of dangerous conduct, either harmful or debilitating, within the past 30 days.*"

50 Pa.Stat.Ann. § 7304(a)(2) (Purdon Supp.1987) (emphasis added).

Thus, in order for a person to be recommitted for an additional period of treatment, it need not be established that the person has inflicted or attempted to inflict serious bodily harm upon another within the past thirty days, as required for the original commitment. The Act specifically states that on recommitment it is not necessary to show that the patient committed an overt act within 30 days of the hearing. *Commonwealth v. Helms,* 352 Pa.Super. 65, 76–78, 506 A.2d 1384, 1390 (1986). *In Re S.O.,* 342 Pa.Su-

and has committed acts in furtherance of the threat to commit harm. 50 Pa.Stat.Ann. § 7301(b) (Purdon Supp.1987).

per. 215, 492 A.2d 727 (1985). It is necessary however for the court to find that within the patient's most recent period of institutionalization, the patient's conduct demonstrated the need for continuing involuntary treatment, Section 7305(a); i.e. his condition continues to evidence a clear and present danger to himself or others, Section 7304(a).

Thus, under the Act, in order to assess the patient's condition, a patient's overall conduct, diagnosis and prognosis may be considered. Recommitment does not require that the patient do specific acts within 30 days of the hearing that show he was a danger to himself or to others. The Act specifically provides, "it shall not be necessary to show the reoccurrence of dangerous conduct ..." section 7304(a). The proper question is not whether appellant's recent assaults involved an attempt to inflict serious bodily harm. The proper question which the trial court did address was whether appellant's *condition* continued to evidence clear and present danger that such acts could occur.

■ The Act also requires that upon recommitment it "shall be sufficient to represent, and upon hearing to reestablish, that the conduct originally required, under Section [7301—initial commitment] in fact occurred." Section 7304(a). We do not read this provision as requiring that the grounds for the original commitment must be relitigated at each recommitment hearing. Such a requirement would be an enormous waste of resources and would create redundancy. We find that this provision is satisfied as long as the patient's commitment history shows that the requisite behavior occurred in the past, unless on recommitment the patient affirmatively challenges the original commitment. In that event, the burden is on the patient to show that the original commitment was improper. Appellant does not challenge her original commitment.

■ The record in the instant case supports appellant's recommitment for additional involuntary treatment. In an involuntary commitment proceeding, the Commonwealth must prove the requisite statutory grounds by clear and convincing evidence. *Commonwealth v. Helms*, 352 Pa.Su-

per. at 72–74, 506 A.2d at 1388. The evidence adduced below satisfies this burden. After being involuntarily committed on the basis of an overt act of clear and present danger to others, appellant continued to exhibit dangerous conduct. During appellant's most recent hospitalization, her repeated, unprovoked assaultive behavior toward staff members at the hospital clearly evidenced her need for continuing involuntary treatment. *See In re S.O.* In addition, her diagnosis as a paranoid schizophrenic with delusions that others are threatening her, together with the prognosis that her assaultive behavior would continue without further treatment, support the trial court's findings.

■ Appellant's second contention is that the trial court improperly relied on facts not in the record. Appellant, after initially appearing before a mental health review officer, sought a review in the Common Pleas Court of the recommendation of commitment made by the mental health review officer. Another hearing was not held before the Common Pleas Court. Rather, the trial judge, with the consent of the parties, received as evidence the tape recording of the hearing before the review officer. The trial court found that the assaults described at the taped hearing before the review officer were recent episodes of a continuous pattern evidencing that appellant posed a clear and present danger to others. In its opinion confirming the review officer's recommendation, the trial court noted that appellant's original commitment was based on appellant's setting a fire and assaulting members of her family. Appellant objects to the trial court's consideration of any facts, particularly those dealing with her original commitment, other than the two assaults described in the taped testimony before the review officer.

However, appellant's original commitment, and the facts supporting it, are contained in the record as the history of appellant's case. Her present confinement is simply a continuation of that initial commitment. As we have already stated, the statute allows for the consideration of a patient's original commitment as contained in that patient's

commitment history. Appellant did not challenge her original commitment at any stage below. Therefore, the trial court did not have to receive additional evidence concerning the original commitment before taking notice of the fact that appellant was originally committed on a showing of her clear and present danger to others.

The order of the court below, involuntarily committing appellant to thirty days of in-patient treatment to be succeeded by one hundred and fifty days of out-patient treatment, is hereby affirmed.