J. S71033/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| R.D., | : | |
| | : | |
| Appellant | : | |
| | : | No. 944 MDA 2014 |

Appeal from the Order Entered May 14, 2014
In the Court of Common Pleas of Centre County
Civil Division No(s).: 2002-1621

BEFORE: FORD ELLIOTT, P.J.E., PANELLA, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:          **FILED DECEMBER 18, 2014**

Appellant, R.D.,[1] appeals from the order entered in the Centre County Court of Common Pleas committing him to inpatient treatment at the Meadows Psychiatric Center with subsequent transfer to Danville State Hospital or another facility approved by his treatment team and Centre County Mental Health and Intellectual Disabilities ("MH/ID") for a period not to exceed 180 days.[2]  Appellant contends the evidence presented at the

---

[*] Former Justice specially assigned to the Superior Court.

[1] Appellant is represented in this appeal by the Public Defender's Office.

[2] Appellant purported to appeal from both the May 14, 2014 order involuntarily committing him for impatient treatment and from the May 16, 2014 order denying his petition for review of certification to involuntary inpatient treatment.  We note that the appeal properly lies from the May

mental health commitment hearing was insufficient to compel his involuntary commitment for psychiatric treatment. We affirm.

Appellant has a history of prior commitments in Centre County. On July 5, 2002, Appellant was committed to a psychiatric facility for a period not to exceed ninety days. Order, 7/5/02. On December 13, 2010, following a Section 7303[3] hearing, Appellant was committed to inpatient

---

14th order and have amended the caption accordingly. ***See In re W.A.***, 91 A.3d 702, 703-04 (Pa. Super. 2014).

Although Appellant's commitment pursuant to the instant order expired on October 1, 2014,

> we note that this case presents a live controversy . . . . This is so "because involuntary commitment affects an important liberty interest, and because by their nature most involuntary commitment orders expire before appellate review is possible." "[W]ere we to dismiss such appeals as moot, the challenged procedure could continue yet its propriety would evade our review."

***See In re Woodside***, 699 A.2d 1293, 1296 (Pa. Super. 1997). Thus, the instant appeal is properly before us. ***Id.***

[3] Section 7303 provides:

> **Extended involuntary emergency treatment certified by a judge or mental health review officer—not to exceed twenty days**
>
> **(a) Persons Subject to Extended Involuntary Emergency Treatment.**—Application for extended involuntary emergency treatment may be made for any person who is being treated pursuant to section 302 whenever the facility determines that the need for emergency treatment is likely to extend beyond 120 hours. The application shall be filed forthwith in the court of

treatment for a period not to exceed twenty days. Order, 12/13/10. On March 4, 2013, following a Section 7304[4] hearing, the court ordered Appellant to be committed to inpatient treatment for a period not to exceed ninety days. Order, 3/4/13. On January 29, 2014, following a Section 7303 hearing, the court ordered Appellant to be committed to inpatient treatment for a period not to exceed twenty days. Order, 1/29/14. On February 24,

---

common pleas, and shall state the grounds on which extended emergency treatment is believed to be necessary. The application shall state the name of any examining physician and the substance of his opinion regarding the mental condition of the person.

50 P.S. § 7303 (footnote omitted).

[4] Section 7304 provides:

**Court-ordered involuntary treatment not to exceed ninety days**

**(a) Persons for Whom Application May be Made.**—(1) A person who is severely mentally disabled and in need of treatment, as defined in section 301(a), may be made subject to court-ordered involuntary treatment upon a determination of clear and present danger under section 301(b)(1) (serious bodily harm to others), or section 301(b)(2)(i) (inability to care for himself, creating a danger of death or serious harm to himself), or 301(b)(2)(ii) (attempted suicide), or 301(b)(2)(iii) (self-mutilation).

50 P.S. § 7304(a). Section 7301(a) provides: "A person is severely mentally disabled when, as a result of mental illness, his capacity to exercise self-control, judgment and discretion in the conduct of his affairs and social relations or to care for his own personal needs is so lessened that he poses a clear and present danger of harm to others or to himself." 50 P.S. § 7301(a).

2014, following a Section 7304 hearing, the court ordered Appellant to be committed for a period not to exceed ninety days. Order, 2/24/14.

On May 8, 2014, Meadows Psychiatric Centre filed a petition for an **additional period of court-ordered involuntary treatment pursuant to Section 7305** of the Mental Health Procedures Act ("MHPA") for 180 days.[5] A hearing was held on May 9, 2014. Muhammad Qamar, M.D., a staff psychiatrist for The Meadows and treating psychiatrist for Appellant, testified as an expert in the field of psychiatry. N.T., 5/9/14, at 5-6. Dr. Qamar opined that Appellant was a danger to himself and others. *Id.* at 7. Appellant is loud, angry, and paranoid such that he refuses to speak with staff members and does not want to take his medication. *Id.* Appellant takes Risperdal and Lithium. *Id.* at 9. Dr. Qamar explained that Appellant

---

[5] Section 7305 provides, in pertinent part:

> At the expiration of a period of court-ordered involuntary treatment under section 304(g) or this section, the court may order treatment for an additional period upon the application of the county administrator or the director of the facility in which the person is receiving treatment. Such order shall be entered upon hearing on findings as required by sections 304(a) and (b), and the further finding of a need for continuing involuntary treatment as shown by conduct during the person's most recent period of court-ordered treatment. The additional period of involuntary treatment shall not exceed 180 days . . . .

50 P.S. § 7305(a). Section 7304(g) provides, in pertinent part: "**(g) Duration of Court-ordered Involuntary Treatment.**—(1) A person may be made subject to court-ordered involuntary treatment under this section for a period not to exceed 90 days . . . ." 50 P.S. § 7304(g).

did not want to take any other medications and controls his treatment himself. *Id.* Appellant does not have a place to live. *Id.* Dr. Qamar opined Appellant's "diagnosis is bipolar type 2." *Id.* He responded in the affirmative when asked whether there would be a reasonable probability if Appellant did not have treatment, "it would lead to death, disability or serious physical debilitation within 30 days[.]" *Id.* at 7-8. Appellant was not cooperating at Meadows and Dr. Qamar opined that the only facility that could help him was a state hospital and he would be transferred as soon as a bed became available. *Id.* at 8. He opined that Appellant was "psychotic, delusional, paranoid, unable to care for himself and risk (sic) of hurting himself and others." *Id.* at 14.

Appellant testified that he did not want to take any medications other than Risperdal and Lithium and that he believed he could live independently. *Id.* at 17.

On May 14, 2014, following a Section 7305 hearing, the court entered an order directing that Appellant "be committed to inpatient treatment at Meadows Psychiatric Center with subsequent transfer to Danville State Hospital or other facility approved his treatment team and Centre County MH/ID for a period not to exceed one hundred eighty (180) days." Order, 5/14/14. On May 16th, Appellant filed a Petition for Review of Certification to Involuntary Inpatient Mental Health Treatment. The court denied the petition. Order, 5/16/14. This timely appeal followed. Appellant filed a

court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal and the trial court filed a responsive opinion.

Appellant raises the following issue for our review:

> 1. Whether the trial court lacked clear and convincing evidence from which it could conclude that Appellant suffered from a mental illness and presented a danger to himself or others so as to compel his involuntary treatment and loss of liberty under the [MHPA]?

Appellant's Brief at 5.

Appellant contends that the evidence was insufficient to compel him to undergo involuntary psychiatric treatment because the evidence did not show that within the past 30 days he was a clear and present danger to others or to himself, **pursuant to Sections 7301(b)(1)**[6] and **(b)(2)**.[7] *Id.*

---

[6] Section 7301(b)(1) provides, in pertinent part:

> Clear and present danger to others shall be shown by establishing that within the past 30 days the person has inflicted or attempted to inflict serious bodily harm on another and that there is a reasonable probability that such conduct will be repeated. . . . For the purpose of this section, a clear and present danger of harm to others may be demonstrated by proof that the person has made threats of harm and has committed acts in furtherance of the threat to commit harm.

50 P.S. § 7301(b)(1).

[7] Section 7301(b)(2) provides, in pertinent part:

> [T]he person has acted in such manner as to evidence that he would be unable, without care, supervision and the continued assistance of others, to satisfy his need for nourishment, personal or medical care, shelter, or self-

at 13 (emphasis added). Appellant argues there was no clear and convincing evidence that he was a danger to himself or others. He reasons, "The doctor's concerns that he might be homeless, might stop taking even the Lithium (which is helping him, but also might be causing his hand tremors)[8] and will not speak with psychiatric staff, does not establish that he is such a danger to himself . . . ." *Id.* at 15-16.

In ***Commonwealth v. Romett***, 538 A.2d 1339 (Pa. Super. 1988), this Court addressed the issue of the sufficiency of the evidence to support a period of additional involuntary psychiatric commitment pursuant to Section 7305. In ***Romett***, the patient argued the evidence "was insufficient in that it did not establish that [she] had, **within thirty days before the hearing**, inflicted or attempted to inflict serious bodily injury on another" pursuant to **Section 7301(b)**. *Id.* at 1341 (emphasis added). This Court found the patient's reliance on Section 7301 was "misplaced." *Id.*

The ***Romett*** Court held the evidence was sufficient and opined:

> Section 7305 provides that, at the expiration of a period of court-ordered involuntary treatment, the court may

---

> protection and safety, and that there is a reasonable probability that death, serious bodily injury or serious physical debilitation would ensue within 30 days unless adequate treatment were afforded under this act[.]

50 P.S. § 7301(b)(2).

[8] We note that Dr. Qamar testified he wanted to reduce Appellant's Lithium dosage because of the tremors, but Appellant did not agree to reduce the dosage. N.T. at 10.

order treatment for an additional period. This order must be entered upon a hearing on the findings required by § 7304(a) and (b) and on the "further finding of a need for continuing involuntary treatment as shown by conduct during the person's most recent period of court-ordered treatment." [50 P.S. § 7305(a)]. The applicable paragraph of § 7304(a) referred to in § 7305 provides as follows:

> "(2) Where a petition is filed for a person already subject to involuntary treatment, it shall be sufficient to represent, and upon hearing to reestablish, that [(1)] the conduct originally required by section [7301] in fact occurred, and that [(2)] his condition continues to evidence a clear and present danger to himself or others. In such an event, **it shall not be necessary to show the reoccurrence of dangerous conduct, either harmful or debilitating, within the past 30 days.**"

[50 P.S. § 7304(a)(2)] (emphasis added).

Thus, **in order for a person to be recommitted for an additional period of treatment, it need not be established that the person has inflicted or attempted to inflict serious bodily harm upon another within the past thirty days**, as required for the original commitment. The Act specifically states that on recommitment it is not necessary to show that the patient committed an overt act within 30 days of the hearing. It is necessary however for the court to find that within the patient's most recent period of institutionalization, the patient's conduct demonstrated the need for continuing involuntary treatment, Section 7305(a); i.e. **his condition continues to evidence a clear and present danger to himself or others**, Section 7304(a).

Thus, under the Act, in order to assess the patient's condition, a patient's overall conduct, diagnosis and prognosis may be considered. Recommitment does not require that the patient do specific acts within 30 days of the hearing that show he was a danger to himself or to others. The Act specifically provides, "it shall not be necessary to show the reoccurrence of dangerous conduct

..." section 7304(a). The proper question is not whether appellant's recent assaults involved an attempt to inflict serious bodily harm. **The proper question which the trial court did address was whether appellant's condition continued to evidence clear and present danger that such acts could occur**.

The Act also requires that upon recommitment it "shall be sufficient to represent, and upon hearing to reestablish, that the conduct originally required, under Section [7301-initial commitment] in fact occurred." Section 7304(a). We do not read this provision as requiring that the grounds for the original commitment must be relitigated at each recommitment hearing. Such a requirement would be an enormous waste of resources and would create redundancy. We find that this provision is satisfied as long as the patient's commitment history shows that the requisite behavior occurred in the past . . . .

*Id.* at 1341-42 (citations omitted and some emphases added).

Instantly, the trial court opined:

The [c]ourt was required to determine "whether [A]ppellant's **condition continued to evidence clear and present danger that such acts could occur."** To do so, the Court listened to the recording of the May 9, 2014 hearing held at The Meadows in Centre County, Pennsylvania. The staff psychiatrist of The Meadows testified credibly that he has been treating Appellant since February 2014, and that since that time, Appellant has continued to be a danger to himself and others. Further, Appellant is paranoid, psychotic, and delusional. He isolates himself, refuses to speak to others to take his medication, refuses to cooperate with his treatment, and cannot provide for his basic care without the help of others. Appellant requires inpatient treatment as the least restrictive possible form of treatment in order to prevent him from harming himself or others.

Trial Ct. Op., 6/24/14, at 2 (citation omitted). We agree.

Instantly, Appellant, like the appellant in **Romett**, argued the evidence for his continued involuntary commitment was insufficient because Sections 7301(b)(1) and (2) were not satisfied. This is not the proper inquiry for continued commitment under Section 7305. **Romett**, 538 A.2d at 1341-42. The trial court addressed the proper inquiry and determined Appellant's conduct demonstrated the need for continuing involuntary treatment. **See id.** Accordingly, we affirm the order of the trial court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/18/2014