J-S32032-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: A.P. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: A.P. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 480 WDA 2021 |

Appeal from the Order Entered March 23, 2021
In the Court of Common Pleas of Erie County Civil Division at No(s):
70129 of 2013

BEFORE:  LAZARUS, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:              **FILED:  December 3, 2021**

A.P. appeals from the Order of the trial court, which affirmed the certification of continued involuntary mental health treatment pursuant to sections 301 and 305 of the Mental Health Procedures Act ("MHPA").  ***See*** 50 P.S. §§ 7301 and 7305.   We affirm.

Relevant to the instant appeal, A.P. has a lengthy history of psychiatric illness.  On December 14, 2019, A.P. was arrested for defiant trespass.  N.T., 3/17/21, at 4.  ***Id.***  On January 17, 2020, A.P. entered a guilty plea to defiant trespass, at which time he was sentenced to 30 days of confinement with probation.  ***Id.***   On January 20, 2020, A.P. was arrested for violating a Protection From Abuse Act[1] Order ("PFA").  ***Id.*** at 5.  While in jail, A.P. was

---

[1] ***See*** 23 Pa.C.S.A. §§ 6101-6122.

non-compliant with his medications, and urinated and defecated in his cell. *Id.* A.P. also "had been naked and masturbating at the cell gate, and engaged in verbal distraction, including banging on doors, [and] ranting and raving in his cell." *Id.* A.P. was found to be not competent to stand trial, and transferred to Torrance State Hospital ("Torrance"). *Id.* at 6. At Torrance, A.P. continued to have delusions regarding the alleged victim in his case. *Id.*

On September 25, 2020, the trial court entered an Order directing A.P.'s transfer to Warren State Hospital ("the Hospital"). Trial Court Order, 9/25/20. In a Petition dated February 4, 2021, the Hospital requested an additional period of continuing involuntary mental health treatment of A.P., pursuant to sections 301 and 305 of the MHPA. Petition, 2/4/21. On February 24, 2021, A.P. appeared before the Mental Health Review Officer ("MRO"), for a hearing on the Hospital's Petition. At the conclusion of the hearing, the MRO certified A.P. for continuing involuntary mental health treatment for a period not to exceed 180 days. MRO Order, 2/24/21. A.P., through counsel, filed a Petition for Review of the certification by the trial court. On March 17, 2021, the trial court conducted a hearing on A.P.'s Petition for Review. On March 22, 2021, the trial court entered an Order, which affirmed the MRO's Order certifying A.P.'s continuing involuntary mental health treatment, pursuant to sections 301 and 305. A.P. timely filed a Notice of Appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

A.P. presents the following claim for our review:

DID THE [TRIAL COURT] COMMIT AN ABUSE OF DISCRETION OR ERROR OF LAW IN FINDING THAT [THE] HOSPITAL PRESENTED COMPETENT EVIDENCE THAT DEATH OR SERIOUS PHYSICAL DEBILITATION OR BODILY INJURY TO SELF OR OTHERS WAS LIKELY IMMINENT IF [A.P.] WAS NOT FORCED TO UNDERGO CONTINUED INVOLUNTARY PSYCHIATRIC TREATMENT?

Brief for Appellant at 7.

We review involuntary treatment orders under the MHPA to "determine whether there is evidence in the record to justify the [hearing] court's findings." *In re S.M.*, 176 A.3d 927, 935 (Pa. Super. 2017) (citation omitted). *But see also id.* (recognizing that an appellate court is not bound by a hearing court's legal conclusions derived from the facts). In reviewing a challenge to the sufficiency of the evidence supporting a determination under the MHPA, we have stated the following:

> Deference to the facts as found by the original factfinder is of particular importance in circumstances where the factfinders have specialized training or knowledge that makes them uniquely qualified to reach the findings and conclusions the General Assembly has entrusted them to make.

*In re Vencil Appeal of Pa. State Police*, 152 A.3d 235, 243 (Pa. 2017); *see also Harris v. No. 1 Contracting Corp.*, 258 A.2d 663, 664 (Pa. Super. 1969) (stating that a reviewing court may not substitute its judgment as to the facts found by the factfinder).

A.P. claims that the Hospital failed to demonstrate that his condition "continues to evidence a clear or present danger to himself or others[,] by conduct during the most recent period of court-ordered treatment." *Id.* at 24. A.P. argues that "[e]ven when left to surmise the basis for the

commitment, … the record does not establish that an extended [section ]305 commitment was warranted." *Id.* A.P. directs our attention to testimony that, during his time at the Hospital, he has taken his medication, interacted with staff, and no longer conveyed any delusional thoughts about having a relationship with the person protected by the PFA. *Id.* at 25. In addition, A.P. testified that his current medications work well, and that he agrees to take them twice per day. *Id.* A.P. points out his testimony that he can rely on the tools he has learned, and that he can take the medication himself. *Id.* A.P. further expressed his desire to work with his previous psychiatrist at the Erie County Prison. *Id.* at 25-26. A.P. further directs our attention to his testimony regarding his willingness to work with a medication monitor, so that he would not forget to take his medication. *Id.* at 26.

> We recognize that
>
> [i]nvoluntary civil commitment of the mentally ill unquestionably constitutes a deprivation of liberty and may be accomplished only in accordance with due process protections. Accordingly, the petitioner in an involuntary commitment proceeding must prove the requisite statutory grounds by clear and convincing evidence.

*Commonwealth v. Helms*, 506 A.2d 1384, 1388 (Pa. Super. 1986). "In applying the [MHPA,] we must take a balanced approach and remain mindful of the patient's due process and liberty interests, while at the same time permitting the mental health system to provide proper treatment to those involuntarily committed to its care." *In re S.L.W.*, 698 A.2d 90, 94 (Pa. Super. 1997).

The MHPA provides, in relevant part, as follows:

**(a) Persons subject. —** Whenever a person is severely mentally disabled and in need of immediate treatment, he may be made subject to involuntary emergency examination and treatment. A person is severely mentally disabled when, as a result of mental illness, his capacity to exercise self-control, judgment and discretion in the conduct of his affairs and social relations or to care for his own personal needs is so lessened that he poses a clear and present danger of harm to others or to himself, as defined in subsection (b) ….

**(b)** Determination of clear and present danger. —

* * *

**(2)** Clear and present danger to himself shall be shown by establishing that within the past 30 days:

    **(i)**      the person has acted in such manner as to evidence that he would be unable, without care, supervision and the continued assistance of others, to satisfy his need for nourishment, personal or medical care, shelter, or self-protection and safety, and that there is a reasonable probability that death, serious bodily injury or serious physical debilitation would ensue within 30 days unless adequate treatment were afforded under this act ….

50 P.S. § 7301. Section 305 provides, in relevant part, as follows:

At the expiration of a period of court-ordered involuntary treatment under section 304(g) or this section, the court may order treatment for an additional period upon the application of the county administrator or the director of the facility in which the person is receiving treatment. Such order shall be entered upon hearing on findings as required by sections 304(a) and (b), and the further finding of a need for continuing involuntary treatment as shown by conduct during the person's most recent period of court-ordered treatment. The additional period of involuntary treatment shall not exceed 180 days …. A person found dangerous to himself under section 301(b)(2)(i), (ii) or (iii) shall be subject to an additional period of involuntary full-time inpatient treatment

- 5 -

only if he has first been released to a less restrictive alternative. This limitation shall not apply where, upon application made by the county administrator or facility director, it is determined by a judge or mental health review officer that such release would not be in the person's best interest.

*Id.* § 7305(a). As this Court has explained,

for a person to be recommitted for an additional period of treatment, it need not be established that the person has inflicted or attempted to inflict serious bodily harm upon another within the past thirty days, as required for the original commitment. The [MHPA] specifically states that on recommitment it is not necessary to show that the patient committed an overt act within 30 days of the hearing. It is necessary however for the court to find that within the patient's most recent period of institutionalization, the patient's conduct demonstrated the need for continuing involuntary treatment, … *i.e.*[,] his condition continues to evidence a clear and present danger to himself or others ....

*Commonwealth v. Romett*, 538 A.2d 1339, 1341-42 (Pa. Super. 1988).

With that in mind, we review the record to determine whether the evidence supports the trial court's Order for the continuing involuntary mental health treatment of A.P., pursuant to 50 P.S. § 7305.

Our review discloses that, on February 24, 2021, the MRO entered an Order for continuing involuntary treatment of A.P. MRO Order, 2/24/21. The MRO found that A.P. was "[i]nitially incarcerated for violation of a PFA …." *Id.* at 1. According to the MRO, A.P. had engaged in "some bizarre behavior[,]" and had a "history of bizarre and disorganized behavior[.]" *Id.* The MRO found that A.P. "would be unable to care [for] himself outside of [a] hospital[.]" *Id.* Finally, the MRO noted A.P.'s diagnosis of schizoaffective disorder. *Id.*

At the February 24, 2021, hearing before the MRO, A.P. recognized that he had a period of "instability" regarding his bipolar disorder for about two years and seven months. N.T., 2/24/21, at 15. A.P. indicated that he had issues with fear and anxiety due to post-traumatic stress disorder. *Id.* A.P. testified that he is a veteran and an evangelist. *Id.* A.P. further testified as follows:

> I do not belong here. I'm responsible enough to take my medicines. Things have happened in the past where I was, in a way, being tortured by a demon. I know that may seem hard to believe, but that's what happened. I – it's over with, that issue.
>
> … I am pursuing my mental health, emotional health. And medication monitor—I believe, Stairways and/or [the Veterans' Administration] medical community can provide for medication monitor just to make sure, you know, I don't forget to take my medicine.
>
> … I'm not a threat to myself. I'm not a threat to others. I can survive safely in the community … I feel great….

*Id.* at 18.

At the March 17, 2021, hearing before the trial court, Isabelita Cesar, M.D. ("Dr. Cesar"), testified that A.P. has a diagnosis of schizoaffective disorder. N.T., 3/17/21, at 6. Dr. Cesar explained that A.P. "has a history of noncompliance with his medication." *Id.* According to Dr. Cesar,

> [A.P. has] been taking his medications for his psychiatric (unintelligible)[,] but his behavior is not consistent with reality. He's been saying that [he] was discharged and he's leaving.
>
> [] [O]verall, we had actually wanted him to benefit from further inpatient hospitalization, and he [*sic*] wanted to complete the self-medication education program. But because of his consistent noncompliance with medication and subsequent

decompensation, he becomes delusional when he's not on medication.

… And we also have … [a] community support plan for him … where they have services in place for him before … he goes back to the community.

… [A.P.] still has active legal charges and will be discharged to the jail. … [B]ut nevertheless, he wants to go with the community support plan so that when he's sat in jail[,] he will be able to [access] base [unit] services in the community.

Be advised that if he's out there, and he's allowed to go back to the community, he has a … recurring pattern of this delusion that he[,] for some reason[,] will believe he is married to someone he is related to, and cause problem [*sic*] with the legal charges and the safety of others.

*Id.* at 7-8.

Dr. Cesar further explained that A.P.'s medication education program has just begun. *Id.* at 9. Dr. Cesar testified that, "[h]opefully[,] with that education, [A.P.] might have better insight regarding the need for continued treatment, medication compliance." *Id.* Dr. Cesar estimated that the medication education program will take "[a] few weeks." *Id.* at 10.

Dr. Cesar further testified that, in the three to four weeks prior to the hearing, A.P. interacted with staff, but "not much with our patients[.]" *Id.* at 11. She pointed out some unusual behavior, where A.P. "just goes and sits out there, possibly … out of the door, saying that he's discharged[,]" and that she has "addressed that with him on maybe three or four occasions." *Id.* Finally, when asked whether A.P. could go to a home "and do what he needs to do to get by[,]" Dr. Cesar responded, "No, not at this time." *Id.* at 12-13.

Dr. Cesar confirmed that her opinion regarding A.P. had not changed since the February 24, 2021, hearing before the MRO. *Id.* at 8. At that hearing, Dr. Cesar testified regarding A.P.'s history of noncompliance with his medication while in jail:

> [T]here is a history that[,] when [A.P.] is in jail, he stopped taking the medication. And then, according to the records, when he stopped taking the medication, he became paranoid; he was urinating and defecating in his cell and started smearing feces and for [*sic*] rapid, flight of speech and did some other bizarre behavior….

N.T., 2/24/21, at 7. Dr. Cesar stated her belief that continued care was necessary. *Id.* at 8.

Dr. Cesar further testified that A.P. posed a risk to himself and others without the continuing involuntary mental health treatment:

> I'm projecting that without the treatment on the unit of this medication program, he might go back to not taking medication while he's in jail[,] and by history he can decompensate and become very psychotic with inability to take care of himself without that self-medication.
>
> … I would say by his history and … his poor appetite and sleeping and responding to paranoid stimuli, being naked, masturbating, talking to himself while in his cell, smearing feces and all those, so those are very disorganized behavior that one would not be able to take care of himself.

*Id.* at 8-9.

We recognize the progress made by A.P. during his treatment. However, mindful of our standard of review, we conclude that there was sufficient evidence to support the trial court's Order for the continuing

involuntary treatment of A.P. under sections 301 and 305 of the MHPA. Accordingly, we affirm the Order of the trial court.[2]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  12/3/2021

---

[2] In his brief, A.P. also argues that the trial court "did not make any specific factual findings" in support of its March 22, 2021, Order.  Brief for Appellant at 22.  However, A.P. raised no issue in this regard in his Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.  Accordingly, it is waived.  **See** Pa.R.A.P. 302(a) (stating that an issue cannot be raised for the first time on appeal); **see also Commonwealth v. Hansley**, 24 A.3d 410, 415 (Pa. Super. 2011) (recognizing that issues not raised in a Rule 1925(b) statement will be deemed waived for review).