J-S39037-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: P.G. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: P.G. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 692 MDA 2022 |

Appeal from the Order Entered April 13, 2022
In the Court of Common Pleas of Berks County Civil Division at No(s):
115 2020 MH

BEFORE: PANELLA, P.J., BENDER, P.J.E., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.: **FILED: FEBRUARY 2, 2023**

Appellant P.G. appeals from the order extending his involuntary commitment for psychiatric treatment with the Wernersville State Hospital (Hospital). Appellant challenges the sufficiency of the evidence for his commitment pursuant to 50 P.S. § 7305 of the Mental Health Procedures Act[1] (MHPA). We affirm.

The trial court summarized the procedural history as follows:

Appellant, P.G., is an adult individual currently residing in Wernersville State Hospital and has been residing there since November 4, 2019. On April 1, 2022, a hearing was held pursuant to 50 P.S. § [7]303, regarding [Hospital's] petition for court-ordered [continued] involuntary treatment. At that hearing, Mental Health Review Officer [(MHRO)] Robin Levingood, Esquire, issued a certification finding that [Appellant] was severely

---

[1] 50 P.S. §§ 7101-7503.

mentally disabled and in need of continued inpatient treatment for a period of time not to exceed one hundred eighty (180) days.

Trial Ct. Op., 6/28/22, at 1 (unpaginated).

We add that at the hearing, Dr. Stephen Burkholder, a staff psychiatrist, was Hospital's sole witness. MHRO Hr'g, 4/1/22, at 00:41-06:35, 11:00-11:12.[2] Dr. Burkholder testified that Appellant had been diagnosed with schizophrenia and that he suffers from "fixed false beliefs" causing him to "develop romantic ideas about people" in his circle, and that challenging these false beliefs results in "angry outbursts" from Appellant. *Id.* at 00:59-01:06, 01:24-01:46, 06:10-06:35. Dr. Burkholder noted that Appellant had not harmed himself or threatened others since the last review period. *Id.* at 04:24-04:29.

Dr. Burkholder opined that Appellant was not a suitable candidate for outpatient treatment at this time. *Id.* at 03:41-03:50. Dr. Burkholder further testified that that his colleague Dr. Graves,[3] a specialist in sexual disorders, evaluated Appellant. *Id.* at 01:47-01:59. Dr. Graves concluded that Appellant would be at a "high risk of re-offense if he were in a less restrictive setting [than Hospital]" and that placement in the community is not

---

[2] The April 1, 2022 hearing before the MHRO was not transcribed, but as stated above, the audio of the hearing was recorded. *See* 50 P.S. § 7304(e)(5) (stating that "[a] stenographic or other sufficient record [of the hearing] shall be made"). The trial court included the audio recording of the April 1, 2022 MHRO hearing in a supplemental certified record. We therefore cite to the testimony by timecode.

[3] The record does not contain Dr. Graves' first name.

appropriate for Appellant because of Appellant's "psychotic content, limited insight, and chronic non-adherence in the community." *Id.* at 02:00-02:09, 11:00-11:38. Dr. Burkholder explained that additional treatment was necessary to adjust Appellant's medication and for additional therapy, particularly individual therapy with Dr. Graves. *Id.* at 03:14-03:23, 03:51-04:18, 04:45-05:26.

Appellant testified at the MHRO hearing. *Id.* at 07:00-10:59. Appellant stated that he that wants his "future to be bright," and he desires connecting with people that are "magical to [his] true life." *Id.* at 07:15-07:25. Appellant described having conversations with a girlfriend, who told him that she is a virgin, but he has difficulty keeping in contact with her. *Id.* at 07:28-08:12. Appellant testified that he believes therapy is good for him, and he voluntarily started therapy as a teenager when his mother died of cancer. *Id.* at 08:40-09:03. He also stated that he takes his medication and informs his doctors if he experiences any side effects. *Id.* at 09:05-09:15.

The trial court described the subsequent procedural history as follows:

[Appellant], through counsel, has petitioned for review of this certification pursuant to 50 P.S. § 7303(g), and further requested this matter be decided upon review of the [audio recording of the] April 1, 2022, hearing regarding the petition for involuntary treatment in lieu of formal testimony. After careful consideration of the audio record[ing] of issues presented at the hearing, this court entered an order on April 13, 2022, granting the petition for review and affirming the certification for extended involuntary commitment for up to one hundred eighty (180) days.

Trial Ct. Op. at 1 (unpaginated) (some formatting altered).

Appellant timely appealed[4] and filed a court-ordered Pa.R.A.P. 1925(b) statement, as well as an amended statement. The trial court filed a Rule 1925(a) opinion addressing Appellant's claim.

On appeal, Appellant raises the following issue for our review:

Did [H]ospital fail[] to present sufficient evidence to support the involuntary commitment of [Appellant] where their sole witness's conclusory testimony did not clearly and convincingly establish that Appellant posed a danger to himself or others, as there were no allegations of specific threats of physical harm or specific kinds of serious physical debilitation of which he was at risk?

Appellant's Brief at 4 (formatting altered).[5]

Appellant argues that Hospital failed to establish by clear and convincing evidence that, Appellant either acted in a manner that established a reasonable probability that serious bodily injury would ensue within thirty days or that he had made threats of harm or committed acts in furtherance of a threat to commit harm within the thirty days preceding the hearing. *Id.* at 8-9 (citing 50 P.S. § 7301(b)(1), (2)(i)). Appellant notes that Dr. Burkholder testified that Appellant had not engaged in self-injury and that he did not

---

[4] In proceedings under the MHPA, a post-trial motion is not required to preserve issues for appeal after the trial court reviews and confirms the MHRO's determination. *See In re K.L.S.*, 934 A.2d 1244, 1249 (Pa. 2007).

[5] We add that even if Appellant has been released from the involuntary 180-day treatment period, this appeal is not moot. *See In re S.M.*, 176 A.3d 927, 930 n.3 (Pa. Super. 2017) (explaining that even if the patient's period of involuntary commitment had ended, the issues raised on appeal "are not moot since they are capable of repetition and may evade review" (citations omitted and formatting altered)).

display any physical aggression towards others. ***Id.*** at 10. Appellant acknowledged that Dr. Burkholder stated that Appellant "had a history of 'acting out' on 'false beliefs,'" and referenced 'psychotic content[,]" but contends that aside from past "angry outbursts[,]" Dr. Burkholder failed to refer to any specific harmful behavior or any danger that Appellant posed to the community. ***Id.*** (citations omitted). Appellant claims Dr. Burkholder's opinion[6] that he was at "high risk of re-offending" was not supported by any specific examples. ***Id.*** at 11-12.

This Court reviews determinations pursuant to the MHPA to "determine whether there is evidence in the record to justify the [hearing] court's findings." ***S.M.***, 176 A.3d at 935 (citation omitted). This Court is "not bound by the hearing court's legal conclusions and must reverse if the evidence does not justify the hearing court's decision." ***Commonwealth ex rel. Gibson v. DiGiacinto,*** 439 A.2d 105, 107 (Pa. 1981) (***Gibson***) (citations omitted).

---

[6] We note that Appellant filed a petition for the trial court to review the MHRO's certification pursuant to 50 P.S. § 7303(g). In that petition, Appellant specifically requested that the trial court review the audio recording of the MHRO hearing in lieu of formal testimony. ***See*** Appellant's Pet. for Review, 4/12/22, at ¶7. For the first time on appeal, Appellant contends that Dr. Burkholder's testimony regarding the opinion of Dr. Graves was hearsay. Appellant's Brief at 10. Appellant did not object to this testimony; therefore, this claim is waived. ***See*** Pa.R.E. 103(a)(1)(A) (a timely objection to the admission of evidence is required to preserve a claim of error); Pa.R.A.P. 302(a) (stating that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal").

The **S.M.** Court explained:

The MHPA provides for involuntary emergency examination and treatment of persons who are "severally mentally disabled and in need of immediate treatment." 50 P.S. § 7301(a). It then authorizes increasingly long periods of commitment for such persons, balanced by increasing due process protections in recognition of the significant deprivations of liberty at stake. Accordingly, in applying the MHPA, we must take a balanced approach and remain mindful of the patient's due process and liberty interests, while at the same time permitting the mental health system to provide proper treatment to those involuntarily committed to its care.

**S.M.**, 176 A.3d at 930-31 (some citations omitted and formatting altered).

If the judge or MHRO finds by

clear and convincing evidence that the person is severely mentally disabled and in need of treatment and subject to subsection (a), an order shall be entered directing treatment of the person in an approved facility as an inpatient or an outpatient, or a combination of such treatment as the director of the facility shall from time to time determine.

**Id.** at 933 (quoting 50 P.S. § 7304(f)(1)); **see also Commonwealth v. Helms**, 506 A.2d 1384, 1388 (Pa. Super. 1986) (stating that "the petitioner in an involuntary commitment proceeding must prove the requisite statutory grounds by clear and convincing evidence" (citations omitted)).

The **S.M.** Court further explained:

Our Supreme Court has defined clear and convincing evidence as testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. The clear and convincing evidence test has been described as an intermediate test, which is more exacting than a preponderance of the evidence test, but less exacting than proof beyond a reasonable doubt.

**S.M.**, 176 A.3d at 937 (citations omitted and formatting altered).

Section 7301(a) describes the circumstances under which a mentally disabled person may be subject to involuntary treatment:

> Whenever a person is severely mentally disabled and in need of immediate treatment, he may be made subject to involuntary emergency examination and treatment. A person is severely mentally disabled when, as a result of mental illness, his capacity to exercise self-control, judgment and discretion in the conduct of his affairs and social relations or to care for his own personal needs is so lessened that he poses a clear and present danger of harm to others or to himself, as defined in [50 P.S. § 7301(b)].

50 P.S. § 7301(a).

Section 7301(b)(1) defines clear and present danger of harm to others, and Section 7301(b)(2) defines clear and present danger of harm to himself, in relevant part, as follows:

> (1) . . . . For the purpose of this section, a clear and present danger of harm to others may be demonstrated by proof that the person has made threats of harm and has committed acts in furtherance of the threat to commit harm.
>
> (2) Clear and present danger to himself shall be shown by establishing that within the past 30 days:
>
> > (i) the person has acted in such manner as to evidence that he would be unable, without care, supervision and the continued assistance of others, to satisfy his need for nourishment, personal or medical care, shelter, or self-protection and safety, and that there is a reasonable probability that death, serious bodily injury or serious physical debilitation would ensue within 30 days unless adequate treatment were afforded under this act; . . . .

50 P.S. § 7301(b)(1), (2)(i).

This Court has explained the procedure for ordering an extension of a period of involuntary treatment as follows:

Section 7305 provides that, at the expiration of a period of court-ordered involuntary treatment, the court may order treatment for an additional period. This order must be entered upon a hearing on the findings required by [50 P.S.] § 7304(a) and (b) and on the "further finding of a need for continuing involuntary treatment as shown by conduct during the person's most recent period of court-ordered treatment." 50 [P.S.] § 7305(a).

*Commonwealth v. Romett*, 538 A.2d 1339, 1341 (Pa. Super. 1988). The extended period of treatment shall not exceed 180 days. 50 P.S. § 7305(a).

Section 7304 states, in relevant part:

Where a petition is filed for a person already subject to involuntary treatment, it shall be sufficient to represent, and upon hearing to reestablish, that the conduct originally required by section [7]301(b) in fact occurred, and that his condition continues to evidence a clear and present danger to himself or others, or that the conduct originally required by section [7]301(c) in fact occurred and that his condition continues to evidence a need for assisted outpatient treatment. In such event, **it shall not be necessary to show the reoccurrence of dangerous conduct, either harmful or debilitating, within the past 30 days.**

50 P.S. § 7304(a)(2) (emphasis added).

The **Romett** Court further explained that

in order for a person to be recommitted for an additional period of treatment [under Sections 7304 and 7305], it need not be established that the person has inflicted or attempted to inflict serious bodily harm upon another within the past thirty days, as required for the original commitment [under Section 7301]. The [MHPA] specifically states that on recommitment it is not necessary to show that the patient committed an overt act within 30 days of the hearing. It is necessary however for the court to find that within the patient's most recent period of institutionalization, the patient's conduct demonstrated the need

- 8 -

for continuing involuntary treatment, [50 P.S. §] 7305(a); *i.e.* his condition continues to evidence a clear and present danger to himself or others[. 50 P.S. §] 7304(a).

Thus, under the [MHPA], in order to assess the patient's condition, a patient's overall conduct, diagnosis and prognosis may be considered. Recommitment does not require that the patient do specific acts within 30 days of the hearing that show he was a danger to himself or to others. The [MHPA] specifically provides, "it shall not be necessary to show the reoccurrence of dangerous conduct . . . ." [50 P.S. §] 7304(a). The proper question is not whether appellant's recent assaults involved an attempt to inflict serious bodily harm. The proper question which the trial court did address was whether [the] appellant's **condition** continued to evidence clear and present danger that such acts could occur.

The [MPHA] also requires that upon recommitment it "shall be sufficient to represent, and upon hearing to reestablish, that the conduct originally required [by] Section [7301—initial commitment] in fact occurred." [50 P.S. §] 7304(a). We do not read this provision as requiring that the grounds for the original commitment must be relitigated at each recommitment hearing. Such a requirement would be an enormous waste of resources and would create redundancy. We find that this provision is satisfied as long as the patient's commitment history shows that the requisite behavior occurred in the past, unless on recommitment the patient affirmatively challenges the original commitment. In that event, the burden is on the patient to show that the original commitment was improper.

*Romett*, 538 A.2d at 1341-42 (some citations omitted, emphasis in original);

*see also S.M.*, 176 A.3d at 936 (the same).

In sum, a Section 7305 petitioner, instantly, Hospital, requesting an additional period of involuntary treatment for a patient already subject to involuntary treatment, such as Appellant, must prove two factors. First, the petitioner, at a hearing, must "reestablish" the patient's prior conduct, which qualified as a clear and present danger to himself, to others, or both, "in fact occurred[,]" and second, the petitioner must establish the patient's condition

- 9 -

continues to evidence a clear and present danger to himself or others. ***See*** 50 P.S. §§ 7301(b)(1)-(2), 7304(a)(2), 7305(a); ***see also S.M.***, 176 A.3d at 936; ***Romett***, 538 A.2d at 1341-42. However, "it shall not be necessary to show the reoccurrence of dangerous conduct, either harmful or debilitating, within the past 30 days." 50 P.S. § 7304(a)(2); ***see also Romett***, 538 A.2d at 1341-42.

Here the trial court explained:

The staff psychiatrist, Dr. Stephen Burkholder, testified that he has met with [Appellant] after reviewing his chart and it was the recommendation of the Hospital that [Appellant] remain in treatment for at least another one hundred eighty days. The doctor further testified that [Appellant] has been diagnosed with schizophrenia and suffers from fixed false beliefs causing him to "develop[] romantic ideas about [people]" in his circle, and that challenging these false beliefs results in "angry outbursts" from [Appellant]. Dr. Burkholder also stated that his colleague, Dr. Graves, who is a specialist on "sexual disorders", evaluated [Appellant] and Dr. Graves determined that [Appellant] was not appropriate for less restrictive placement because of his "psychotic content, limited insight and [chronic] non-adherence in the community". Dr. Graves also concluded that [Appellant] would be at a "high risk of re-offense if he were in a less restrictive setting." Though [Appellant] is "polite" and compliant with his medications, Dr. Burkholder said "his insight and judgment are still [fairly] poor," and the Hospital is "still titrating [medication] and [trying to] adjust[] [the] medications in order to provide [the most] relief [of his] symptoms". This process must be completed before [Appellant] is allowed to leave and is so critical to his care that the Hospital has not formulated a treatment plan beyond medication adjustments and routine group and individual therapy. Moreover, this court found [Appellant's] testimony at the hearing quite disturbing as he rambled about wanting to "connect with people [that] are magical to my true life" and recounted "having a room-to-room conversation with a girlfriend [of mine] . . . she tells me she is a virgin . . . I['ve been] waiting to communicate with her . . . but it's kinda hard when I [don't] have her contact information." [Appellant's] testimony evidenced a clear break

from objective reality and supported the fixedness of this belief noted by Dr. Burkholder in his testimony and the "psychotic content" described by Dr. Graves. Additionally, [Appellant's] family is, according to both Dr. Burkholder and [Appellant] himself, only minimally or tangentially involved and not a meaningful support resource.

This court found the testimony of Dr. Burkholder credible and convincing regarding the potential danger posed by such delusions as evidenced by [Appellant's] own testimony at the hearing, and found the necessity of the initial involuntary commitment to be amply supported by the record.

Trial Ct. Op. at 2-3 (unpaginated) (some formatting altered).

Appellant's reliance on Section 7301(b) is misplaced. As stated above, an extension of a period of involuntary treatment under Sections 7304 and 7305 does not require a showing that Appellant acted in such manner that established that he was a clear and present danger to himself or others within the previous thirty days. *See* 50 P.S. §§ 7304(a)(2), 7305(a); *Romett*, 538 A.2d at 1341-42. Rather, a petitioner requesting an extension of treatment for a patient who has already been committed has the burden to show that the patient's "condition continues to evidence a clear and present danger to himself or others."[7] 50 P.S. § 7304(a)(2); *see also* 50 P.S. § 7305(a); *S.M.*, 176 A.3d at 936; *Romett*, 538 A.2d at 1342.

_____

[7] Appellant does not contest the first element under Section 7304, that his prior conduct, which qualified as a clear and present danger to himself, to others, or both, occurred. *See* 50 P.S. § 7304(a)(2). Therefore, any challenge to sufficiency of the evidence supporting this element is waived. *See, e.g.*, *In re Estate of S.G.L.*, 885 A.2d 73, 73 n.1 (Pa. Super. 2005) (noting that a claim that the patient did not argue in her brief was waived).

- 11 -

Based on our review of the record, we agree with the trial court's conclusions. As noted by the trial court, Dr. Burkholder testified that Appellant's condition results in him developing false beliefs and romantic ideas about others around him, and that Appellant has angry outbursts when others challenge those ideas. *See* MHRO Hr'g, 4/1/22, at 00:59-01:06, 01:24-01:46, 06:10-06:35. Appellant testified about having a girlfriend, but he could not contact her. *See id.* at 07:28-08:12. Dr. Burkholder testified that Appellant was at a "high risk of re-offense if he were in a less restrictive setting [than Hospital]" and Appellant suffered from "psychotic content, limited insight, and non-adherence in the community." *See id.* at 02:00-02:09, 11:00-11:38.

On this record, we agree with the trial court that there is sufficient evidence in the record to justify its findings that that Appellant's condition continues to evidence a clear and present danger to himself or others. *See* Trial Ct. Op. at 2-3; *see also S.M.*, 176 A.3d at 935-36; *Romett*, 538 A.2d at 1342; 50 P.S. §§ 7304(a)(2), 7305(a). Therefore, we affirm the order extending Appellant's commitment.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>02/02/2023</u>